UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **PROJECT ON GOVERNMENT OVERSIGHT, INC.**<br>1100 13th Street, NW<br>Suite 800<br>Washington, DC 20005,<br><br>  **Plaintiff,**<br><br> v.<br><br>**U.S. DEPARTMENT OF HOMELAND SECURITY**<br>245 Murray Lane, S.W.<br>Washington, DC 20528<br><br>  **Defendant.** | **Civil Action No.** |

## COMPLAINT

1.  This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Declaratory Judgment Act, 28 U.S.C. §§ 220 and 2202, for injunctive, declaratory, and other appropriate relief. Plaintiff Project On Government Oversight, Inc. ("POGO") challenges the failure of defendant U.S. Department of Homeland Security's ("DHS") Office of Inspector General ("OIG") to provide POGO with all non-exempt documents on an expedited basis that are responsive to a FOIA request POGO filed with the DHS OIG on July 5, 2022, seeking document related to efforts by DHS Inspector General Joseph Cuffari to change and suppress findings from a report his office drafted on sexual misconduct by DHS law enforcement personnel, his and his leadership team's response to congressional and press inquiries about this report and other matters on which POGO has reported, and Inspector General Cuffari's government travel practices.

**JURISDICTION AND VENUE**

2. This Court has subject matter jurisdiction over the parties pursuant to 5 U.S.C. §§ 552(a)(4)(B) and 552(a)(6)(C)(i). This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

3. Venue lies in this district under 5 U.S.C. § 552(a)(4)(B).

**PARTIES**

4. Plaintiff POGO is a nonpartisan independent organization based in Washington, D.C. and organized under section 501(c)(3) of the Internal Revenue Code. Founded in 1981, POGO champions reforms to achieve a more effective, ethical, and accountable federal government that safeguards constitutional principles. POGO's investigators and journalists take leads and information from insiders and verify the information through investigations using FOIA, interviews, and other fact-finding strategies. POGO's investigative work has been recognized by Members of Congress, executive branch officials, and professional journalism organizations. For instance, in 2015, POGO won the Robert D.G. Lewis Watchdog Award, the Society of Professional Journalists Washington, D.C. Professional Chapter's highest journalistic award, for reporting on the Department of Justice's opaque system for handling allegations of attorney misconduct within its ranks. In 2018, POGO won an award from the Society for Advancing Business Editing & Writing for its investigative series scrutinizing the government's oversight of offshore drilling. POGO extensively used records obtained under FOIA for this investigation.

5. DHS and its subcomponent OIG are a federal agency within the meaning of FOIA, 5 U.S.C. § 552(f) and have possession and control of the records POGO seeks in this action.

11

## STATUTORY BACKGROUND

6. FOIA requires federal agencies, upon request, to make records "promptly available to any person," 5 U.S.C. § 552(a)(3)(A), unless one or more specific statutory exemptions apply.

7. The agency must provide the public records when they are requested in order "to ensure an informed citizenry, vital to the functioning democratic society." *NLRB v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 242 (1978).

8. An agency must make a determination on a FOIA request within twenty business days and notify the requester of which of the requested records it will release, which it will withhold and why, and the requester's right to appeal the determination to the agency head. 5 U.S.C. § 552(a)(6)(A)(i).

9. The twenty-day deadline for an agency to make a determination on a request begins on the earlier of: (l) the date "the request is first received by the appropriate component of the agency" or (2) "ten days after the request is "first received by any component of the agency that is designated in the agency's regulations . . . to receive [FOIA] requests." 5 U.S.C. § 552(a)(6)(A)(ii).

10. In unusual circumstances, an agency may extend the time limits the FOIA prescribes by written notice to the person making such request that sets forth the reasons for such extension and the date on which a determination is "expected" to be dispatched. No such notice shall specify a date that would result in an extension for more than ten working days. 5 U.S.C. § 552(a)(6)(B)(i).

11. The FOIA also requires agencies to promulgate regulations that provide for

12

expedited processing of FOIA requests where the requester demonstrates a "compelling need" as well as in "other cases determined by the agency." 5 U.S.C. § 552(a)(6)(E)(i). The FOIA defines "compelling need" to include requests "made by a person primarily engaged in disseminating information" where there is an "urgency to inform the public concerning actual or alleged Federal Government activity." *Id.* at § 552(a)(6)(E)(v)(II).

12. DHS regulations at 6 C.F.R. § 5.5(e)(1)(iv) provide for expedition for "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence." DHS regulations further provide for expedition where there is "an urgency to inform the public about an actual or alleged federal government activity, if made by a person who is primarily engaged in disseminating information." 6 C.F.R. § 5.5(e)(1)(ii).

13. Agencies are required to make a determination on a request for expedition within 10 calendar days "after the date of the request." 5 U.S.C. § 552(a)(6)(E)(ii)(I). DHS regulations mirror this requirement. 6 C.F.R. § 5.5(e)(4).

14. Once expedition is granted agencies must process the request "as soon as practicable." 5 U.S.C. § 552(a)(6)(E)(ii).

15. An agency's failure to respond within 10 calendar days to a request for expedition is subject to judicial review without exhausting administrative remedies. 5 U.S.C. § 552(a)(6)(E)(iii).

16. Agency decisions to deny or affirm denial of a request for expedition are subject to judicial review "based on the record before the agency at the time of the determination." 5 U.S.C. § 552(a)(6)(E)(iii).

17. If an agency does not respond to a FOIA request by the statutory deadline, the

requester is deemed to have exhausted administrative remedies and may immediately pursue judicial review. 5 U.S.C. §§ 552(a)(6)(C)(i), 552(a)(4)(B).

## FACTUAL BACKGROUND

18. On April 7, 2022, public reporting and a report by Plaintiff POGO revealed that Inspector General Cuffari and top aides had directed OIG staff to remove damaging findings from a draft report on the results of an OIG review, begun four years earlier, that focused on sexual misconduct committed by DHS law enforcement personnel. Chris Cameron, Homeland Security Watchdog Omitted Damaging Finds From Reports, *New York Times*, Apr. 7, 2022, https://www.nytimes.com/2022/04/07/us/politics/homeland-security-inspector-general.html; Adam Zagorin and Nick Schwellenbach, Protecting the Predators at DHS, Apr. 7, 2022, https://www.pogo.org/investigation/2022/04/protecting-the-predators-at-dhs ("POGO Report").

19. Based on its review of the draft report and internal DHS documents POGO reported that a survey DHS completed in 2018 showed that more than 10,000 employees of DHS law enforcement components "say they have experienced sexual harassment or sexual misconduct." POGO Report at 2. *See also* Cameron, *New York Times*, Apr. 7, 2022. Only about 22 percent, however, formally reported the harassment or misconduct, and of those about 41 percent "say doing so 'negatively affected their careers.'" POGO Report at 5.

20. The DHS draft report also documented "a pattern of the agencies [Customs and Border Protection, Immigration and Customs Enforcement, the Secret Service and the Transportation Security Administration] using cash payments, with payouts as high as $255,000, to settle sexual harassment complaints without investigating or disciplining the perpetrators." Cameron, *New York Times*, Apr. 7, 2022. *See also* POGO Report at 9 (in 185 out of 249 cases where DHS components reached settlements IG staff "found no records showing that DHS

14

components carried out investigations or took disciplinary action against purported perpetrators.").

21. When confronted with the detailed evidence of widespread misconduct and domestic violence gathered by the OIG staff senior IG staff directed that some of the more damaging findings be removed from the draft report. Cameron, *New York Times*, Apr. 7, 2022. These included the fact that the four DHS agencies had "paid 21 employees nearly $1 million in settlements from sexual harassment-related complaints over six years, "and that "in most instances" there was "no record of an investigation or disciplinary action[.]" *Id.*

22. Inspector General Cuffari also wanted removed a section noting that the four DHS components "had 'put victims and the public at risk of further violence'" because the perpetrators were allowed to keep their firearms. *Id.* He further directed that certain statistics and case studies be stripped from the report, including an incident where "[a] CBP officer was arrested and charged with assault after he punched his wife in the face[.]" POGO Report at 21.

23. The detailed evidence in the OIG draft report and material deleted from the report "create the appearance that the four DHS components—which employ roughly 150,000 federal workers—suffer from a widespread culture of impunity, silencing, and retaliation when dealing with sexual misconduct and domestic violence." POGO Report at 6.

24. This was not the first time that the OIG had made deletions from a report that significantly changed its emphasis and focus. A report Inspector General Cuffari's office issued in November 2020, U.S. Dep't of Homeland Security, Office of Inspector General, OIG-21-09, DHS Components Have Not Complied with the Department's Guidelines for Implementing the Lautenberg Amendment (Nov. 13, 2020), also omitted key findings and recommendations. POGO Report at 3. A draft of that report had highlighted 35 cases in which DHS law

15

enforcement agents "had engaged in domestic violence but had not been convicted." POGO Report at 17. Although DHS had "'substantiated' their violent abuse of domestic partners," "[i]n most instances" they had "received little or no discipline and remained a law enforcement officer with access to a firearm[.]" *Id.* This was some of the information that "was stripped out of the final document," based on instructions in an "email signed by Cuffari[.]" *Id.*

25. On April 7, 2022, just after publication of the *New York Times* article reporting on the directions by Inspector General Cuffari and his senior staff to remove damaging material from the draft report, DHS Secretary Alejandro N. Mayorkas issued a memorandum to all DHS components and office leaders. The memorandum directed DHS's general counsel "to lead a Department-wide working group to conduct a 45-day review of the employee misconduct discipline processes currently in effect throughout DHS and to recommend any necessary improvements, including to ensure these processes align with relevant best practices and are consistent with all applicable laws."

26. On June 16, 2022, Secretary Mayorkas announced that he had directed DHS "to reform its employee misconduct disciplinary process," based on the 45-day review he ordered in his April 7, 2022 memorandum. *See* https://www.dhs.gov/news/2022/06/16/secretary-mayorkas-directs-dhs-reform-employee-misconduct-discipline-processes. The reforms included "centralizing the decision-making process for disciplinary actions and overhauling agency policies regarding disciplinary penalties" with the goal of "promot[ing] accountability and ensur[ing] consequences are consistent and appropriate based on the severity of the misconduct." *Id.*

27. On April 26, 2022, the Chair and Ranking Member of the U.S. Senate Committee on the Judiciary wrote to Inspector General Cuffari expressing their concern with reports that he

"and senior officials in your office have diminished and delayed reports of sexual harassment and other misconduct" at DHS. The letter posed five questions to the IG and sought a response by May 17, 2022.

28.  By letter dated May 13, 2022, Inspector General Cuffari responded to the Committee's letter. Among other things he noted that he was "considering closing the review without issuing a report." Inspector General Cuffari offered various excuses for the delay in issuing the report, including the claim that his staff had withheld from him information about the sexual misconduct survey and that some staff "refused to accept input from subject matter experts." He further claimed that he merely "concurred" in staff recommendations that resulted in "major revisions to the report[.]"

29.  By letter dated May 10, 2022, the Chairs of the House Committee on Oversight and Reform and the House Committee on Homeland Security also wrote to Inspector General Cuffari concerning "disturbing reports that under your leadership, the . . . DHS OIG sought to censor findings of domestic abuse and sexual harassment by DHS employees." The letter referenced, among other things, documents POGO had obtained demonstrating that previously the OIG had made "significant substantive changes" to the November 2020 report on domestic abuse that "fundamentally altered" the report's scope. The May 10 letter requested that the OIG produce seven categories of records by May 24, 2022.

*Plaintiff's July 5, 2022 Freedom of Information Act Request*

30.  By email dated July 5, 2022, POGO submitted to the DHS OIG a FOIA request seeking five categories of records. Specifically, POGO requested:

> (1) All records sent to and/or in the possession of Inspector General Joseph Cuffari, Deputy Inspector General and Chief of Staff Kristen Fredricks, Principal Deputy Inspector General Glenn Sklar, and/or DHS official Ellen McSweeney about the Office of Inspector General project titled "CBP, ICE, TSA, and USSS Handling of Employee

17

Allegations of Sexual Harassment and Workplace Sexual Misconduct" <u>prior to December 3, 2020</u>. The records do not have to mention the project by its exact name. The records sought include but are not limited to emails and calendar invites or appointments related to briefings. We also seek any attachments to relevant emails or calendar entries.

(2) Emails and text messages (including messages in apps such as Signal) to and from and/or in the possession of DHS Inspector General Joseph Cuffari, Deputy IG and Chief of Staff Kristen Fredricks, Principal Deputy IG Glenn Sklar, and DHS official Ellen McSweeney mentioning "sexual harassment", "sexual misconduct", "domestic violence," "Lafayette Square", "POGO", "Project On Government Oversight", "Schwellenbach", "Zagorin", "Washington Post", "New York Times", "CNN", "Durbin", "Grassley", "Maloney", "Thompson", "House Oversight", "House Homeland Security", and/or "Senate Judiciary." (Ms. Fredricks has a Signal account associated with her private cell phone number, 202-345-4573.)

(3) Emails to and from Joseph Cuffari, Kristen Fredricks, and Glenn Sklar with email addresses that include "mail.house.gov" and "senate.gov" mentioning "sexual harassment", "sexual misconduct", and "domestic violence" since April 6, 2022.
(4) Calendars, including but not limited to those created using Microsoft Outlook and Microsoft Teams, for Joseph Cuffari, Kristen Fredricks, and Glenn Sklar since July 26, 2019.

(5) Travel itineraries and any other travel records (including expense records for hotel and restaurants) for Joseph Cuffari since July 26, 2019. Any emails to or from IG Cuffari and/or Tamara Farmer regarding his travel, including transportation, hotel, and restaurant bookings. Any DHS OIG correspondence with Congress regarding IG Cuffari's travel. Any records regarding IG Cuffari's meetings with Air Force Office of Special Investigation (AFOSI) officials. On at least three occasions, IG Cuffari has visited AFOSI officials during official travel (on February 21, 2020; December 10, 2021; and February 14, 2022). DHS OIG uses Concur for managing travel.

31.     POGO also requested a waiver of fees explaining that the requested records will inform the public about the operations or activities of the government, specifically in how DHS's top watchdog has overseen the department's handling of on-duty misconduct by DHS law enforcement employees and substantiated violent off-duty misconduct relevant to those employee's law enforcement duties. POGO further explained that it seeks to assess the recent written statements of the DHS OIG to Congress explaining how it is handling these oversight projects. POGO explained it seeks records that can shed light on the integrity of government operations at DHS and at the leadership level in the DHS OIG. POGO stated it has no

commercial interest in the requested information.

32. POGO further requested that it not be charged search or review fees because it qualifies as a member of the news media. POGO explained how it routinely and systematically disseminates information to thousands of concerned citizens, policymakers, and the media via its website and through its joint publication of stories in other publications.

33. POGO also requested that the DHS OIG expedite its processing of the request because of the urgency to inform the public given that the records relate to misconduct within the federal government—misconduct that Secretary Majorkas has stated "underscore[s] the need for immediate action." The need for immediate action also was recognized and underscored by the May 10, 2022 letter to Inspector General Cuffari from the Chairs of the House Committee on Oversight and Reform and the House Committee on Homeland Security, who noted that "[s]exual harassment and misconduct in agency ranks always demands immediate action."

34. POGO also requested expedition because its request relates to a matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence. In support POGO cited to the May 10, 2022 congressional letter, which stated that the public reporting about the deletions from the draft OIG report and Inspector General Cuffari's briefing to congressional staff "raise concerns about your [Cuffari's] ability to independently and effectively perform your duties as Inspector General, and call into question "whether you are able to perform high-quality audit work with integrity, objectivity, and independence, and provide accountability and transparency over government programs and operations."

35. To date, POGO has received no response to either its FOIA request for records or its request for expedition.

19

36. Under 5 U.S.C. § 552(a)(6)(C)(i), POGO has now effectively exhausted all applicable administrative remedies with respect to its July 5, 2022 request.

## PLAINTIFF'S CLAIMS FOR RELIEF

### CLAIM ONE
### (Wrongful Withholding of Non-Exempt Records)

37. Plaintiff repeats and re-alleges paragraphs 1-36.

38. Plaintiff properly asked for records within the custody and control of the U.S. Department of Homeland Security.

39. Defendant DHS wrongfully withheld agency records requested by Plaintiff by failing to comply with the statutory time limit for making a determination on both expedited and non-expedited FOIA requests, and by withholding from disclosure records responsive to Plaintiff's request of the DHS OIG.

40. Plaintiff POGO is therefore entitled to injunctive and declaratory relief with respect to the immediate processing and disclosure of the records requested in its July 5, 2022 FOIA request.

### CLAIM TWO
### (Failure to Grant Expedition)

41. Plaintiff repeats and re-alleges paragraphs 1-40.

42. Plaintiff properly asked that the DHS OIG expedite the processing of Plaintiff's FOIA request, which seek agency records within the custody and control DHS, based on its showing of widespread and exceptional media interest in the requested information, which involves possible questions of the government's integrity that affect public confidence.

43. Plaintiff also properly sought expedition from the DHS OIG because of the urgency to inform the public about an actual or alleged federal government activity and because

POGO is primarily engaged in disseminating information.

44. Defendant DHS failed to comply with the statutory time limit for making a determination on Plaintiff's request for expedition and improperly failed to process Plaintiff's request on an expedited basis.

45. Plaintiff has exhausted all applicable administrative remedies with respect to Defendant DHS's failure to make a determination on Plaintiff's requests for expedition.

46. Plaintiff therefore is entitled to injunctive and declaratory relief with respect to the immediate and expedited processing and disclosure of the requested records.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

(1) Order Defendant to immediately and fully process plaintiff's July 5, 2022 FOIA request and to disclose all non-exempt documents immediately and at no cost to Plaintiff;

(2) Issue a declaration that Plaintiff is entitled to the immediate and expedited processing and disclosure of the requested records at no cost to Plaintiff;

(3) Provide for expeditious proceedings in this action;

(4) Retain jurisdiction of this action to ensure no agency records are wrongfully withheld;

(5) Award Plaintiff its costs and reasonable attorneys' fees in this action; and

(6) Grant such other relief as the Court may deem just and proper.

Respectfully submitted,

/s/ Anne L. Weismann
Anne L. Weismann
(D.C. Bar No. 298190)
5335 Wisconsin Avenue, N.W.

21

                                      Suite 640
                                      Washington, D.C. 20015
                                      (301) 717-6610
                                      weismann.anne@gmail.com

Dated: August 15, 2022                *Attorney for Plaintiff*

22