UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| PROJECT ON GOVERNMENT OVERSIGHT, INC., <br><br> *Plaintiff,* <br><br> v. <br><br> U.S. DEPARTMENT OF HOMELAND SECURITY, <br><br> *Defendant.* | Civil Action No. 22-2424 (ABJ) |

## JOINT STATUS REPORT

Pursuant to the Court's December 22, 2022, Order, Plaintiff, the Project on Government Oversight, Inc., and Defendant, U.S. Department of Homeland Security, by and through undersigned counsel, respectfully submit the following joint status report regarding the above-captioned Freedom of Information Act ("FOIA") matter.

Defendant's Report:

Since the filing of the last joint status report on December 21, 2022 (ECF No. 9), Defendant has continued to conduct the searches for documents responsive to Plaintiff's request. At this juncture, with the exception of two custodians, all searches have been completed. However, Defendant anticipates that those remaining two searches will be completed on February 22, 2023. Defendant approximates that there are 260,659 pages of potentially responsive records based on the completed searches as of February 17, 2023. Defendant will provide the approximate number of pages of potentially responsive records for the remaining two custodians by February 24, 2023. Defendant has determined based on current personnel and resources that it will be able to process 500 pages per month and make rolling interim productions on the 25th of each month, with the first interim production beginning on March 25, 2023.

Plaintiff's Report:

This case concerns an expedited FOIA request Plaintiff filed on July 5, 2022, seeking records related to public reporting that DHS Inspector General Cuffari and top aides had directed the Office of Inspector General ("OIG") staff to remove damaging findings from a draft report on the results of an OIG review begun four years earlier that focused on sexual misconduct committed by DHS law enforcement personnel. Complaint ¶ 18 (ECF No. 1). Plaintiff sought expedition based in part on DHS Secretary Majorkas's statement that the misconduct at issue "underscore[s] the need for immediate action." *Id.* ¶ 23. POGO explained in its request that expedition also was warranted given the concerns raised by the Chairs of the House Committee on Oversight and Reform and the House Committee on Homeland Security in a May 10, 2022 letter about Inspector Cuffari's "ability to independently and effectively perform [his] duties as Inspector General" and the questions his conduct raised about whether he was "able to perform high-quality work with integrity, objectivity, and independence, and provide accountability and transparency over government programs and operations." *Id.* ¶ 34. Currari continues to serve as Inspector General for DHS.

Plaintiff brought this lawsuit on August 15, 2022, after receiving no response from DHS to its FOIA request. In a Joint Status Report filed on December 22, 2022 (ECF No. 9), the parties advised the Court that Plaintiff had narrowed three of the five sub-requests in its FOIA request. Plaintiff narrowed its request after DHS advised that as initially written the request "will yield an extraordinarily high number of pages of potentially responsive records." Defendant's Report, Oct. 25, 2022 (ECF No. 8).

Despite this narrowing DHS now estimates there are at least 260,659 pages of potentially responsive records. DHS first made this representation to Plaintiff on February 17, 2022, and only

in the context of providing Plaintiff with its proposed Joint Status Report. In the time between Plaintiff's narrowing of its request in December 2022 and the present Defendant has never reached out to Plaintiff to seek additional ways to streamline processing the request or advised Plaintiff that even as narrowed the request would still yield a very large number of potentially responsive documents. To better understand how DHS has arrived at what is still an "extraordinarily high number of potentially responsive records" despite Plaintiff's narrowing Plaintiff has requested that DHS provide the search terms it has used and whether it has conducted a de-duplication. To date, however, Defendant has refused to provide this information.

Given these circumstances Plaintiff submits that the timetable Defendant proposes is neither reasonable nor justified. Defendant has not, for example, explained why it cannot produce a single document until March 25, 2023, six months after Plaintiff brought this action. Moreover, Defendant has not met its burden of justifying a processing rate of 500 pages per month, which would require a total of over 521 months to complete processing based on Defendant's current estimate of the number of responsive documents. Nor has DHS invoked the statutory "safety valve" of an Open America stay where an agency faces exceptional circumstances. 5 U.S.C. § 552(a)(6)(C)(i); *Citizens for Responsibility & Ethics in Washington v. FCC*, 711 F.3d 180, 188 (D.C. Cir. 2013).

Under comparable circumstances the court in *Seavey v. Dep't of Justice*, 266 F. Supp. 3d 241, 246 (D.D.C. 2017), rejected the FBI's contention that a processing rate of 500 pages per month was justified by "administrative efficiency" and to avoid "monopoliz[ing]" the agency's resources. This Court should do likewise. In language equally applicable here the *Seavey* court, 266 F. Supp. 3d at 246, noted:

> The FBI's administrative efficiency rationale is simply without merit. In the name of reducing its own administrative headaches, the FBI's 500-page policy ensures that

larger requests are subject to an interminable delay in being completed. Under the 500-page policy, requestors must wait 1 year for every 6,000 potentially responsive documents, and those who request tens of thousands of documents may wait decades. "Telling the requester 'You'll get the documents 15, or eight, years from now' amounts as a practical matter in most cases to saying 'regardless of whether you are entitled to the documents, we will not give them to you.'" *Fiduccia v. Dep't of Justice*, 185 F.3d 1035, 1041 (9th Cir. 1999). Where a request imposes truly burdensome obligations on an agency, FOIA provides one safety valve—a stay for exceptional circumstances. 5 U.S.C. § 552(a)(6)(C)(i)) . . . the FBI has not invoked that statutory provision in this case.

Plaintiff remains ready and willing to work with Defendant to further narrow this request. Defendant's refusal to provide Plaintiff with basic information about how it currently is conducting its search is both disappointing and counterproductive. Equally disappointing is Defendant's refusal to bear any responsibility and its insistent that it is Plaintiff—the party with the least amount of knowledge about how DHS is conducting its search—that bears sole responsibility for why it will take Defendant years to complete processing. Given these circumstances Plaintiff requests that the Court order Defendant to provide Plaintiff and the Court within an explanation of precisely how it conducted its search, including *inter alia* the search terms used, the offices searched, and whether the agency conducted a de-duplication. Plaintiff seeks this information solely to determine whether and how its request can be further narrowed and Defendant's processing workload lightened. The parties should then be ordered to file by March 14, 2023, a plan for completing processing of the request.

Finally, the circumstances here demonstrate why a requirement that the parties have until May 22, 2023, to further update the Court on the status of this case is unreasonable, particularly given that Defendant still has not completed its search for all responsive records.

Defendant's Response:

It is Plaintiff's obligation to present a FOIA request that reasonably describes the records sought. *See Dale v. IRS*, 238 F. Supp. 2d 99, 103 (D.D.C. 2002) (FOIA requires that a request

"reasonably describe such records," 5 U.S.C. § 552(a)(3)(A), and the agency's obligation to produce records under FOIA "begins only upon receipt of a valid request."). To be sure, Plaintiff is in the best position to know what it is seeking.

In any event, despite Defendant's numerous attempts to provide options to narrow Plaintiff's request, Plaintiff's request continues to be unreasonably broad, and Plaintiff mischaracterizes the Parties' efforts to narrow its overbroad request. Despite Plaintiff's assertion that Defendant first represented to Plaintiff on February 17, 2023, with the approximate number of pages responsive to the request, it is incorrect for Plaintiff to suggest that Defendant has not attempted to narrow Plaintiff's request. Indeed, Defendant's counsel has reached out to Plaintiff beginning in October, on at least four occasions, to assist Plaintiff. Defendant's counsel first reached out to Plaintiff's counsel on October 19, 2022, requesting that Plaintiff apply date ranges to its subpart 2. On a second occasion, on November 21, 2022, Defendant's counsel reached out to Plaintiff's counsel advising her that as written, Plaintiff's request would result in a large number of documents that may or may not be responsive to Plaintiff's request and recommended potential ways for Plaintiff to narrow its request. At that time, Defendant's counsel also advised Plaintiff's counsel that for one category alone, Plaintiff could expect to receive over 300,000 pages of documents in response due to Plaintiff's overbroad request, as written and that two subparts of Plaintiff's request (2 and 5) were driving the large number of documents potentially responsive to Plaintiff's request. Defendant's counsel offered on a third occasion, on November 28, 2022, to further narrow the request. And on a fourth occasion, on December 6, 2022, Defendant's counsel offered an opportunity to Plaintiff to further narrow its request. At that time, the Parties mutually agreed on Plaintiff's request, as narrowed.

Since the change in the scope of the five subparts, Defendant has continued to conduct the necessary searches to retrieve the responsive information to the varied subparts but Plaintiff's requests for calendars and travel information related to senior officials of a federal agency will result in voluminous records. Similarly, Plaintiff's requests, as narrowed, for senior official emails containing the following ten key terms ("POGO", "Project on Government Oversight", "Schwellenbach", "Zagorin", "Lafayette Square", "Grassley", "Durbin", "Washington Post", "New York Times", "CNN"), regardless of context, will also likely result in voluminous records. And Plaintiff rejected Defendant's requests for the elimination of this portion of subpart 2. Despite Defendant's efforts and Plaintiff's multiple opportunities to engage with Defendant as to potential narrowing, Plaintiff, best positioned to know what it seeks, has not reached out to Defendant's counsel in an attempt to further narrow, despite (1) Defendant providing Plaintiff options for narrowing, some of which were rejected, and (2) Defendant providing information to Plaintiff regarding the subparts of Plaintiff's requests that are generating the highest number of responsive documents.

Since the Parties' mutual agreement on a more narrowed request in December 2022, Defendant has been in the process of conducting the searches and will finish its searches on February 22, 2023. While Plaintiff now seeks additional guidance, Plaintiff had ample opportunity to contact Defendant to further narrow its request and is armed with the information it needs, *e.g.*, the subparts generating the highest page counts, in order to offer its own narrowing proposal. There is no requirement pursuant to FOIA that an agency seek guidance from a requester regarding how a search should be conducted. Nor is the Agency required to provide the requester, at this juncture, detailed information regarding how it has conducted the searches (nor has Plaintiff

provided any support for this notion).  Should Plaintiff like to brief that particular issue, it can be briefed during the course of a motion for summary judgment.

As to Plaintiff assertion that "Defendant has not, [] explained why it cannot produce a single document until March 25, 2023, six months after Plaintiff brought this action," it bears repeating that Plaintiff's request with five subparts wase not scoped until early December 2022 based upon the Parties' mutual agreement regarding the content of the subparts and the Agency has been conducting searches for responsive information since that time based on Plaintiff's change in scope.  Nor is a "statutory safety valve" necessary because as Defendant has noted, its search will be completed on February 22, 2023.  In this vein, Plaintiff mischaracterizes the holding in *Seavey v. DOJ*, 266 F. Supp. 3d 241, 246 (D.D.C. 2017), a case in which the district court noted that an agency can extend its response time to "complete its review of the records." *Id*.  DHS will complete its review of records on February 22, 2022; thus, there is no need for the use of a statutory safety valve of an *Open America* stay.

Finally, based upon personnel, resources, and current workload, it is reasonable for the Agency to process 500 pages per month and any additional production would effectively move other plaintiffs to the front of the line ahead of other requestors.  *See, e.g.*, *Middle E. Forum v. Dep't of Homeland Sec.*, 297 F. Supp. 3d 183, 185 (D.D.C. 2018) (courts in D.C. Circuit have considered the effect of other FOIA requests when analyzing the burden on an agency of meeting deadlines for review and production of FOIA material); *Elec. Privacy Info. Ctr. v. Dep't of Just.*, 15 F. Supp. 3d 32, 47 (D.D.C. 2014) (denying plaintiff's motion for preliminary injunction requesting immediate production of documents pursuant to FOIA request).  Further, Plaintiff has not established that it warrants special treatment to move Plaintiff to the "front of the line" of the Agency's established queue.  Courts within this district faced with this issue typically consider the agency's workload and personnel and have routinely held that an agency is not required to

process more than the 500 pages per month the Agency has committed to processing beginning in March. *See Energy Future Coalition v. Office of Mgmt. & Budget*, 200 F. Supp. 3d 154, 161 (D.D.C. 2016) (rejecting plaintiff's motion to mandate review of 1,000 documents per month and taking into account increase in number of FOIA requests directed to agency, number of FOIA requests under review, and number of FOIA litigations in which agency involved); *cf. Nat'l Sec. Counselors v. Dep't of Justice*, 848 F.3d 467, 471–72 (D.C. Cir. 2017) (in context of challenge to FOIA processing fees, stating policy of processing 500 pages per request per month "serves to promote efficient responses to a larger number of requesters"). On this basis, Defendant respectfully submits that the Agency process and produce Plaintiff's FOIA requests at a monthly rate of 500 pages per month, beginning on March 25, 2023, which is consistent with decisions within this district.

As such, given that Defendant intends to complete its search on February 22, 2023 and make its first interim production by March 25, 2023, Defendant requests that the Parties file a joint status report apprising the Court as to the status of the case on or before May 22, 2023.

\*   \*   \*

| | |
|---|---|
| Dated: February 21, 2022 | */s/ Anne L. Weismann*<br>Anne L. Weismann<br>(D.C. Bar No. 298190)<br>5335 Wisconsin Avenue, N.W.<br>Suite 640<br>Washington, D.C. 20015<br>(301) 717-6610<br>weismann.anne@gmail.com<br><br>*Attorney for Plaintiff*<br><br>MATTHEW M. GRAVES, D.C. Bar #481052<br>United States Attorney<br><br>BRIAN P. HUDAK<br>Chief, Civil Division<br><br>By: */s/ Dedra S. Curteman*<br>DEDRA S. CURTEMAN, IL Bar #6279766<br>Assistant United States Attorney<br>601 D Street, N.W.<br>Washington, D.C. 20530<br>Telephone: (202) 252-2550<br><br>*Counsel for Defendant* |