UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PROJECT ON GOVERNMENT OVERSIGHT, INC.,<br><br>*Plaintiff,*<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY,<br>*Defendant.* | )<br>)<br>)<br>)<br>)<br>)<br>)   Civ. A. No. 22-2424 (ABJ)<br>)<br>)<br>)<br>)<br>)<br>) |

## JOINT STATUS REPORT

Pursuant to the Court's March 3, 2023, Order, Plaintiff, the Project on Government Oversight, Inc., and Defendant, U.S. Department of Homeland Security ("DHS"), by and through undersigned counsel, respectfully submit the following joint status report regarding the above-captioned Freedom of Information Act ("FOIA") matter.

Defendant's Report:

Pursuant to the Court's March 3, 2023, Order, on March 21, 2023, the DHS Office of the Inspector General ("OIG") informed Plaintiff of the approximate potentially responsive page counts for sub-requests 1-5 of the FOIA request. Consistent with the Court's March 3, 2023 Order and the Joint Status Report, ECF No. 10, DHS OIG intends to make its first interim production on or before April 17, 2023 at a processing rate of 500 pages per month and with monthly interim productions to follow on a monthly basis.

Since the Parties' last joint status report, DHS has continued to work with Plaintiff to narrow its request. On March 23, 2023, Plaintiff requested that DHS OIG further narrow the scope of a portion of the second sub-request and provide page counts for sub-request 2. DHS OIG has agreed to narrow the portion of the sub-request 2 following its first production, which will be

released on or before April 17, 2023." DHS OIG will also provide updated page counts for the specific portions of the second sub-request that was re-scoped on March 23, 2023 by Plaintiff.

On March 24, 2023 at approximately 3:33 p.m., Plaintiff provided further narrowing terms for sub-request 1 (elimination of calendar invites and calendar entries); sub-request 2 (eliminate the terms "sexual harassment" and "sexual misconduct" and apply the search terms "Washington Post" only in connection with reporters "Carol Leonnig," "Lisa Rein," or "Maria Sachhetti" during the time frames of April 16, 2021 through April 23, 2021 and July 20, 2022 through September 23, 2022 and use the search term "CNN" only in connection with the reporters "Geneva Sands," "Whitney Wild," Priscilla Alvarez," or "Zachery Cohen" during the time frame of February 8, 2022 through August 13, 2022). Plaintiff also agreed to eliminate sub-request 4 (calendars). Plaintiff also requested a meeting with the DHS OIG Information Technology Group to determine which search terms were generating the highest hit counts. Since this request was made at approximately 3:30 p.m. on the day of filing, DHS OIG is willing to consider the request, but cannot agree to provide an answer at this late hour given the number of staff who are out of the office. DHS OIG, however, will communicate with Plaintiff the week beginning March 27, 2023 as to whether the requested meeting can occur.

Plaintiff's Report:

The Court's Order of March 3, 2023 followed the parties' submission of conflicting proposals on how to proceed. Defendant proposed a processing rate of 500 pages per month that, given its estimated number of potentially responsive documents, would take more than 43 years to complete. Plaintiff requested that the Court order DHS "to provide Plaintiff with full page counts for the remaining requested categories of documents . . . so that the parties can determine an appropriate processing rate[.]" Plaintiff's Supplemental Status Report (ECF No. 12), March 3,

2023. In response to these filings the Court ordered Defendant to inform Plaintiff of an anticipated page count by March 21 and the parties to submit a joint status report by March 24 "informing the Court whether they have been able to agree to a production schedule based on that information." Order of March 3, 2023.

The Court-ordered page count that Defendant provided Plaintiff on March 21, which totals 228,465, raised as many questions as it answered for Plaintiff. For example, the total count for category 2 (emails with keywords) ballooned from an estimate of 174,936 pages on November 21, 2022, to 201,622 pages despite Plaintiff's ongoing efforts to narrow. Plaintiff has sought answers to questions it raised with Defendant, including page counts for specific search terms, to determine if Plaintiff can narrow the request even further.

With the new information Plaintiff has also further narrowed its request. First, Plaintiff has eliminated two types of records sought in category one: calendar invites and calendars attached to responsive emails. For category two, Plaintiff has eliminated two search terms entirely, narrowed three others, and limited the date range. And Plaintiff has eliminated category four, which seeks calendars. Plaintiff believes that with the additional requested information it may be able to further narrow its request. Toward that end, Plaintiff has requested a meeting with the individuals processing the request to better understand what is driving the large numbers of potentially responsive records. Defendant has promised a response to this request by next week.

At the same time, however, Defendant has advised Plaintiff that its position on a processing rate remains the same: 500 pages per month. At that rate it will take Defendant 38 years to complete processing, a relatively modest reduction from the previously estimated 43 years. Defendant's proposed processing rate makes a nullity of the Freedom of Information Act, essentially ensuring the documents Plaintiff seeks on a matter of significant public interest will not come to light until

long after that the ability to address DHS Inspector General Joseph Cuffari's actions has passed, and public interest has faded.

Plaintiff has repeatedly narrowed its request to ease the burden on Defendant while ensuring it receives documents within a reasonable timeframe. Plaintiff remains committed to seeking ways to further narrow upon receipt of the requested page counts and answers to its questions about how some of the page-count estimates were derived and reasons behind some of the large page counts. But even with that a processing rate of 500 pages remains unworkable and unreasonable. Without additional information from Defendant and a final page count, however, Plaintiff cannot propose an alternative processing rate. Upon receiving that information Plaintiff is prepared to propose alternative processing rate. Plaintiff also notes that at no time has Defendant availed itself of the statutory remedy of an *Open America* stay, nor has Defendant presented evidence in the form of agency declarations justifying its 500-page-per-month proposal.

Defendant's Response:

DHS OIG has worked continuously with Plaintiff over the course of approximately six months, since October 2022, to attempt to narrow Plaintiff's request.  This has occurred over numerous e-mails and an online meeting between the Parties.  Nonetheless, Plaintiff's request remains as it is—with approximately 230,000 potentially responsive pages.   While Plaintiff is unhappy with DHS OIG's proposed processing rate, any processing rate above 500 pages per month is unreasonable given DHS OIG's limited staff, the press of other matters its FOIA office is handling, and the established queue DHS OIG is managing.

DHS OIG is managing 409 active FOIA requests and 14 FOIA requests in active litigation with a limited staff consisting of 4 federal employees and 2 contract employees.  Given the number of active litigation matters, open FOIA requests, and limited staff, DHS OIG cannot agree to

process any more than 500 pages per month, without displacing other requestors that are ahead of

Plaintiff.  Given the Agency's resources of limited staff, active FOIA requests, and active litigation

that it is processing ahead of Plaintiff's request, it is reasonable for DHS OIG to process 500 pages

per month.  *See Middle E. Forum v. U.S.*, 297 F. Supp. 3d 183, 185-186 (D.D.C. 2018) (considering

the effect of other FOIA requests when analyzing the burden on an agency of meeting deadlines

for review and production of FOIA material in a given case, as well as the volume of requests,

resources and capacity of the agency, other FOIA litigation in which the agency is involved, and

how ordering swifter production would affect other FOIA requesters patiently waiting their turn).

DHS OIG's processing rate of 500 pages per month is also consistent with other processing

FOIA processing rates set by courts within this district.  *See, e.g., Nat'l Sec. Counselors v. Dep't

of Just.*, 848 F.3d 467, 471–72 (D.C. Cir. 2017) (recognizing that FBI's 500-page-per-month

policy "serves to promote efficient responses to a larger number of requesters"); Min. Order,

*Project for Privacy & Surveillance Accountability, Inc. v. Office of the Dir. of Nat'l Intel.*, Civ. A.

No. 21-1217 (TSC) (D.D.C. Apr. 19, 2022) (approving, over the plaintiff's objection, agency's

processing rate of 100 pages per month); Min. Order, *Citizens for Resp. & Ethics in Wash. v. Dep't

of Homeland Sec.*, Civ. A. No. 19-3544 (APM) (D.D.C. Feb. 1, 2022) (declining to increase the

processing of 300 pages to 500 pages per month); *Chaverra v. ICE*, Civ. A. No. 18-0289 (JEB),

2020 WL 7419670, at *1 (D.D.C. Nov. 5, 2020) ("this Court and others have approved production

schedules akin to what [the agency] proposes here"—i.e., roughly 500 pages per month); Min.

Order, *Martinez v. Dep't of Just.*, Civ. A. No. 20-0251 (RDM) (D.D.C. June 5, 2020) (ordering

500 page per month processing rate); Min. Order, *Reps. Comm. for Freedom of the Press v. CBP*,

Civ. A. No. 19-2401 (CRC) (D.D.C. Apr. 3, 2020) (ordering 500 page per month processing rate);

Min. Order, *S. Utah Wilderness All. v. Dep't of Interior*, Civ. A. No. 19-2203 (TNM) (D.D.C. Nov.

25, 2019) (ordering 500 page per month processing rate); Min. Order, *Ctr. for Reproductive Rights v. Dep't of State,* Civ. A. No. 18-2217 (DLF) (D.D.C. Apr. 3, 2019) (denying plaintiff's request for a 1,000 page per month processing rate; ordering a 300 page per month processing rate); Min. Order, *Ctr. for Bio. Diversity v. Dep't of Interior*, Civ. A. No. 17-1595 (RC) (D.D.C. July 23, 2019) (ordering 500 page per month processing rate).

Finally, Plaintiff's position appears to be an attempt to receive preferential treatment, at the inevitable expense of other requesters.  But DHS OIG must ensure that its FOIA resources are allocated "on an equal and fair basis," particularly as Plaintiff has shown no "exceptional need or urgency." *Open Am. v. Watergate Special Prosecution Force*, 547 F.2d 605, 615-16 (D.C. Cir. 1976).  Given Plaintiff's desire to continue to work to narrow its request, DHS OIG will apply the March 23 scoping proposal to the request following its first interim production on April 17, 2023 and will communicate with Plaintiff as to whether a meeting can be arranged with DHS OIG IT professionals for further discussion regarding the March 24 scoping proposal.

The Parties respectfully request that they provide a further update to the Court on or before April 24, 2023.

*      *      *

Dated:  March 24, 2023

*/s/ Anne L. Weismann*
Anne L. Weismann
(D.C. Bar No. 298190)
5335 Wisconsin Avenue, N.W.
Suite 640
Washington, D.C. 20015
(301) 717-6610
weismann.anne@gmail.com

*Attorney for Plaintiff*


MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

By: */s/ Dedra S. Curteman*
DEDRA S. CURTEMAN, IL Bar #6279766
Assistant United States Attorney
601 D Street, N.W.
Washington, D.C. 20530
Telephone: (202) 252-2550

*Counsel for Defendant*