UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PROJECT ON GOVERNMENT
OVERSIGHT, INC.,

        Plaintiff,

    v.                                        Civil Action No. 22-2424 (ABJ)

DEPARTMENT OF HOMELAND
SECURITY,

        Defendant.

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO
PLAINTIFF'S MOTION FOR A PROCESSING ORDER**

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

DEDRA S. CURTEMAN
Assistant United States Attorney
U.S. Attorney's Office for the District of Columbia

*Attorneys for the United States of America*

# TABLE OF CONTENTS

BACKGROUND ............................................................................................................... 3

    I.     Statutory and Regulatory Background ........................................................... 3

    II.    Plaintiff's July 5, 2022, FOIA Request and Inspector General's Efforts to Narrow the Request ............................................................................................................ 4

    III.   The Inspector General's FOIA Workload ................................................. 10

LEGAL STANDARD .................................................................................................... 12

ARGUMENT .................................................................................................................. 13

    I.     Plaintiff's Request Fails to Warrant Expedited Processing ......................... 13

    II.    The Department Has Conducted A Search for Responsive Text Messages Sent/Received with the Signal Application. ....................................................................... 21

CONCLUSION ............................................................................................................... 22

# **TABLE OF AUTHORITIES**

<u>Cases</u>

*Chaverra v. ICE* 18-0289,
    Civ. A. No. 18-0289 (JEB) 2020 WL 7419670 (D.D.C. Nov. 5, 2020) ................................... 16

*Al-Fayed v. CIA*,
    254 F.3d 300 (D.C. Cir. 2001) .................................................................................... 17, 18, 20

*Am. Ctr. for Law & Just. v. Dep't. of Homeland Sec.*,
    Civ. A. No. 21-1364 (TNM), 2021 WL 5231939 (D.D.C. Nov. 10, 2021) ....................... 14, 15

*Clemente v. FBI*,
    71 F. Supp. 3d 262  (D.D.C. 2014) .......................................................................................... 19

*Colbert v. FBI*, Civ. A.,
    No. 16-1790 (DLF), 2018 WL 6299966 (D.D.C. Sept. 3, 2018)........................................ 12, 13

*Daily Caller v. Dep't of State*,
    152 F. Supp. 3d 1 (D.D.C. 2015) ............................................................................................... 3

*Dale v. IRS*,
    238 F. Supp. 2d 99 (D.D.C. 2002) ............................................................................................. 1

*Energy Future Coal. v. Off. of Mgmt. & Budge*t,
    200 F. Supp. 3d 154 (D.D.C. 2016) .................................................................................. 13, 17

*Energy Pol'y Adv. v. Dep't of the Interior*,
    Civ. A. No. 21-1247 (JEB), 2021 WL 4306079 (D.D.C. Sept. 22, 2021).............................. 20

*Harrington v. FDA*,
    581 F. Supp. 3d 145 (D.D.C. 2022) ......................................................................................... 13

*Legal Eagle, LLC v. Nat'l Sec. Council*, Civ. A.,
    No. 20-1732 (RC), 2021 WL 1061222 (D.D.C. Mar. 18, 2021) ............................................. 20

*Middle E. Forum v. Dept' of Homeland Sec.*,
    297 F. Supp. 3d 183 (D.D.C. 2018) ................................................................... 13, 14, 15, 17

*Nat'l Sec. Counselors v. Dep't of Just.*,
    848 F.3d 467 (D.C. Cir. 2017) .......................................................................................... 13, 16

*Open Am. v. Watergate Special Prosecution Force*,
    547 F.2d 605 (D.C. Cir. 1976) ................................................................................... 3, 13, 14

*Privacy Info. Ctr. v. Dep't of Just.*,
   15 F. Supp. 3d 32 (D.D.C 2014) ........................................................................... 13, 14

*Privacy Info. Ctr. v. Dep't of Just.*,
   322 F. Supp. 2d 1 (D.D. C. 2003) ............................................................................... 20

*Seavey v. Dep't of Just.*,
   266 F. Supp. 3d 241 (D.D.C. 2017) ............................................................................ 17

<u>Statutes</u>

5 U.S.C. § 552(a)(6)(E) ...................................................................................................... 3
Pub. L. No. 104-231 ........................................................................................................... 3

<u>Regulations</u>

6 C.F.R. § 5.5(a) ............................................................................................................ 3, 19
6 C.F.R. § 5.5(e)(1) ....................................................................................................... 3, 19
6 C.F.R. § 5.5(e)(3) .......................................................................................................... 19

This Court should deny Plaintiff's, the Project on Government Oversight's ("Plaintiff's"), motion for a processing order, which seeks to jump the line on all other Freedom of Information Act ("FOIA") requestors—in their own request for a broad swath of data from the Department of Homeland Security's (the "Department's") Office of Inspector General (the "Inspector General"), the component responsible for Plaintiff's FOIA request.[1]   Contrary to Plaintiff's unfounded assertion that the Inspector General is delaying productions, the Inspector General has expended significant resources and worked diligently to respond to Plaintiff's broad request and has provided non-exempt, responsive records, and page counts in accordance with all agreed upon and Court-ordered deadlines.  Any suggestion by Plaintiff that the Inspector General is delaying productions or not operating in good faith is incorrect.

In the past fiscal year alone, the Inspector General's FOIA Unit has seen a 38.5% increase in FOIA litigation, which is substantial given the small size of the Inspector General's FOIA Unit, consisting of five full-time employees who handle the day-to-day management and processing of FOIA requests.  As demonstrated by the Declaration of Okechi Chigewe, attached hereto as Exhibit 1, as of May 26, 2023, four of the five employees are responsible for the active processing of 402 FOIA requests, consults, referrals, and appeals, and assisting in 14 open federal district

---

[1]     Plaintiff suggests on several occasions that the Inspector General "seeks to delay as long as possible the public revelation of [its] role in suppressing evidence of widespread misconduct and domestic violence by [the Department's] law enforcement personnel." Mot. at 9. *See also* Mot. at 5.  The Inspector General has met its obligations under FOIA and has expended considerable time and resources answering Plaintiff's questions, re-running searches for Plaintiff's re-scoped requests and providing updated page counts to Plaintiff to enable Plaintiff to make a FOIA request that reasonably describes the documents it seeks.  Any delay in the production of responsive, non-exempt pages of information is due to the existing breadth of Plaintiff's request. FOIA mandates that upon request, federal agencies "shall make . . . records promptly available to any person" so long as the request "(i) reasonably describes such records."  5 U.S.C. § 552(a)(3)(A).  "Broad, sweeping requests lacking specificity," as Plaintiff has submitted, "are not sufficient." *Dale v. IRS*, 238 F. Supp. 2d 99, 104 (D.D.C. 2002).

court cases, three of which are in active record production or preparing for record production.  Any increase in the production rate will cause substantial disruption to the overall processing of FOIA requests and other on-going FOIA litigation, would displace other pending FOIA requests, and would impair the ability of the Inspector General to ensure that the production of records comports with the FOIA's disclosure limitations.  Despite the Inspector General's efforts to assist Plaintiff with the narrowing of their request, Plaintiff now seeks an order requiring the Inspector General to process 1,000 responsive, non-duplicate pages per month.  *See* ECF No. 15 ("Mot.") at 9.  This request should be denied.

Plaintiff's requested relief for expedited processing is undercut given that Plaintiff's request does not concern a matter of *current* exigency because the request concerns a draft report titled "CBP, ICE, TSA, and USSS Handling of Employee Allegations of Sexual Harassment and Workplace Sexual Misconduct" and associated documents prior to December 3, 2020.  Nor is the matter one of widespread and exceptional media interest and Plaintiff has not shown that absent expedited processing, significant adverse consequences will result.  Simply put, while Plaintiff may be frustrated by waiting in line for records to which they contend they are entitled, Plaintiff fails to carry its burden of demonstrating entitlement to an expedited production, let alone an expedited production requiring the Inspector General to process 1,000 responsive non-duplicate pages per month.  There is no reason for the Court to impose an even more burdensome production rate than the 600 pages per month rate already prescribed by the Court.  Accordingly, Plaintiff's motion should be denied.

## BACKGROUND

### I.     Statutory and Regulatory Background

Agencies ordinarily process FOIA requests for agency records on a first-in, first-out basis. *Daily Caller v. Dep't of State*, 152 F. Supp. 3d 1, 8 (D.D.C. 2015) (citing *Open Am. v. Watergate Special Prosecution Force*, 547 F.2d 605, 616 (D.C. Cir. 1976)).  In 1996, Congress amended the FOIA to provide for "expedited processing" of certain categories of requests.  *See* Electronic Freedom of Information Amendments of 1996 ("EFOIA"), Pub. L. No. 104-231, § 8 (codified at 5 U.S.C. § 552(a)(6)(E)).  Expedition, when granted, entitles requesters to move immediately to the front of the applicable processing queue, ahead of requests filed previously by other persons, but added to a queue of other outstanding requests granted expedited processing.  As explained in Department regulations, "[c]omponents ordinarily will respond to requests according to their order of receipt."  6 C.F.R. § 5.5(a).  Department regulations allow expedited processing when the "component determines that [a request] involve[s]: (i) Circumstances in which the lack of expedited processing could reasonably be expected to pose an imminent threat to the life or physical safety of an individual; (ii) An urgency to inform the public about an actual or alleged federal government activity, if made by a person who is primarily engaged in disseminating information; (iii) The loss of substantial due process rights; or (iv) A matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence."  6 C.F.R. § 5.5(e)(1).  "If expedited processing is granted, the request shall be given priority, placed in the processing track for expedited requests, and shall be processed as soon as practicable."  *Id.* § 5.5(e)(4); *see also* 5 U.S.C. § 552(a)(6)(E)(iii).

**II.     Plaintiff's July 5, 2022, FOIA Request and Inspector General's Efforts to Narrow the Request**

Plaintiff filed this FOIA action on August 18, 2022 concerning its July 5, 2022 FOIA request.  *See* ECF No. 1.  Plaintiff's FOIA request seeks:

(1)     All records sent to and/or in possession of Inspector General Joseph Cuffari, Deputy Inspector General and Chief of Staff Kristen Fredricks, Principal Deputy Inspector General Glenn Sklar, and/or [Department] official Ellen McSweeney about the Office of Inspector General project titled "CBP, ICE, TSA, and USSS Handling of Employee Allegations of Sexual Harassment and Workplace Sexual Misconduct" prior to December 3, 2020.  The records do not have to mention the project by its exact name.  The records sought include but are not limited to emails and calendar invites or appointments related to briefings.  We also seek any attachments to relevant emails or calendar entries.

(2)     Emails and text messages (including messages in apps such as Signal) to and from and/or in the possession of [Inspector General] Joseph Cuffari, Deputy [Inspector General] and Chief of Staff Kristen Fredricks, Principal Deputy [Inspector General] Glenn Sklar, and [Department] official Ellen McSweeney mentioning "sexual harassment[,]" "sexual misconduct[,]" "domestic violence," "Lafayette Square[,]" "Plaintiff[,]" "Project on Government Oversight[,]" "Schwellenbach[,]" "Zagorin[,]" "Washington Post[,]" "New York Times[,]" "CNN[,]" "Durbin[,]" "Grassley[,]" "Maloney[,]" "Thompson[,]" "House Oversight[,]" "House Homeland Security[,]" and/or "Senate Judiciary."  ([Inspector General employee] has a Signal account associated with [their] private cell phone number, [])

(3)     Emails to and from Joseph Cuffari, Kristen Fredericks, and Glenn Sklar with email addresses that include "mail.house.gov" and "senate.gov" mentioning "sexual harassment[,]" "sexual misconduct[,]" and "domestic violence" since April 6, 2022.

(4)     Calendars, including, but not limited to those created using Microsoft Outlook and Microsoft Teams, for Joseph Cuffari, Kristen Fredericks, and Glen Sklar since July 26, 2019.

(5)     Travel itineraries and any other travel records (including expense records for hotel and restaurants) for Joseph Cuffari since July 26, 2019.  Any emails to or from [Inspector General] Cuffari and/or Tamara Farmer regarding his travel, including transportation, hotel, and restaurant bookings.   Any [Inspector General] correspondence with Congress regarding [Inspector General] Cuffari's travel.   Any records regarding [Inspector General] Cuffari's meetings with Air Force Office of Special Investigation (AFOSI) officials.   On at least three occasions, [Inspector

General] Cuffari has visited AFOSI officials during official travel (on February 21, 2020; December 10, 2021; and February 14, 2022).  [The Inspector General] uses Concur for managing travel.

*Id*. ¶ 30 (emphasis in original).

From the time of Plaintiff's filing until the Parties' December 2022 Joint Status Report, filed on December 15, 2022, the Parties conferred on at least six occasions, including on October 4, 2022, October 19, 2022, October 20, 2022, November 21, 2022, November 28, 2022, November 29, 2022.  More specifically, on November 21, 2022, the undersigned contacted Plaintiff's counsel with a specific proposal for narrowing given the breadth of Plaintiff's request, which at that time corresponded to over 318,780 pages of potentially responsive information for just one of the five sub-requests contained in the July 5, 2022 FOIA request.  *See* Ex. 2, Nov. 21, 202, Email to Plaintiff.  *See also* ECF No. 10 (explaining that counsel reached out to Plaintiff's counsel on October 19, 20220, requesting that Plaintiff apply date ranges to sub-request 2; that on November 21, 2022, counsel reached out to Plaintiff's counsel advising that as written, the request would result in a large number of pages; and on November 28, 2022, the undersigned counsel offered options to further narrow).

As of the December 2022 Joint Status Report, Plaintiff agreed to a re-scoping of three of the five sub-requests, but not in a way that substantially and meaningfully reduced the number of responsive pages.  ECF No. 9 at 1.  Following the Inspector General providing page counts for the sub-requests on November 21, 2022, Plaintiff began to make several re-scoping requests, which included a date range change for sub-request 1 from "prior to December 3, 2020" to "November 1, 2017 to December 3, 2020"; a date range change applicable to sub-request 2 to include from July 26, 2019 to the date of the search; an elimination of the search terms "domestic violence," "Thompson," "Maloney," "House Oversight," "House Homeland Security," and "Senate

Judiciary" for sub-request 2; clarification that the terms "sexual harassment" and "sexual misconduct" listed in sub-request 2 should be connected to the report ("CBP, ICE, TSA, and USSS Handling of Employee Allegations of Sexual Harassment and Workplace Sexual Misconduct) listed in sub-request 1 to be responsive; and noting that the search for "Plaintiff," "Project on Government Oversight," "Schwellenbach," "Zagorin," "Lafayette Square," "Grassley," "Durbin," "Washington Post," "New York Times," and "CNN" were not tied to any particular Inspector General project or report.  *See* Ex. 3, Nov. 29, 2022, Emails.  On November 28, 2022, Plaintiff proposed to eliminate the then existing sub-request 5 and replace it with: (a) travel voucher forms and receipts/supporting documentation submitted in conjunction with the travel voucher forms for Joseph Cuffari since July 26, 2019; (b) any emails from Inspector General Cuffari regarding his travel, including transportation, hotel, and restaurant bookings since July 26, 2019, and (c) any correspondence between Congress and Inspector General Cuffari, Principal Deputy Inspector General Sklar, Counsel James Read and/or Chief of Staff Kristen Fredericks regarding Inspector General Cuffari's travel since July 26, 2019.  *See id.*  On November 29, 2022, Plaintiff changed the search date range for sub-request 1 to "July 26, 2019-December 2, 2020."  Ex. 4, Dec. 6, 2022, Email.  And on December 6, 2022, Plaintiff agreed to change the search date range for sub-request 2 to "July 26, 2019 to the date of the search."  *Id.*

Thereafter, on March 1, 2023, the Parties met via telephone to discuss Plaintiff's request and the approximate number of pages responsive to Plaintiff's request.  Based on that meeting, Plaintiff agreed to eliminate the supporting documentation and receipts for the travel vouchers in sub-request 5(a) and calendar attachments in sub-request 4.  Regarding sub-request 2, Plaintiff noted that it was not interested in receiving daily newsclips and full unannotated texts of published news articles.  On March 2, Plaintiff changed the search date ranges for the three news

organizations listed in sub-request 2—the New York Times, Washington Post, and CNN.  The new dates for the Washington Post are April 16, 2021 through April 23, 2021, and July 20, 2022 through September 23, 2022.  The new dates for the New York Times are June 14, 2021 through July 2, 2021, and April 5, 2022 through August 13, 2022.  The new dates for CNN are February 8, 2022 through August 13, 2022.  *See* Ex. 5, March 2, 2023, Email.

Pursuant to the Court's March 3, 2023, Order, on March 21, 2023, the Inspector General informed Plaintiff of the approximate number of potentially responsive page counts for sub-requests 1-5 of the FOIA request, which was approximately 8,407 pages for sub-request 1, 263,942 pages for sub-request 2,[2] 6,044 pages for sub-request 3, 10,837 pages for sub-request 4, and 1,453 pages, along with 102 voucher forms for sub-request 5.  *See* ECF No. 13 at 1; Ex. 6, Mar. 21, 2023, Email.  The undersigned also noted in the March 21, 2023, Email, that for sub-request 2, the terms "sexual harassment," "sexual misconduct," "Lafayette Square," "Plaintiff," "Project on Government Oversight," "Schwellenbach," "Zagorin," "Durbin," "Grassley" with the date range July 29, 2019, until the date of search without news clippings, generated approximately 178,332 pages of responsive information.  *See id.*

On March 23, 2023, Plaintiff requested that the Inspector General further re-scope a portion of the second sub-request by changing the search date range to May 31, 2020 through the date of search and requested individual page counts for each of the search terms in sub-request 2 (*i.e.*, "sexual harassment," "sexual misconduct," "Lafayette Square," "Plaintiff," "Project on Government Oversight," "Schwellenback," "Zagorin," "Durbin," and "Grassley") which the Inspector General agreed to do following its first production.  Ex. 7, March 23, 2023, Email.  On

---

[2]     The Inspector General also provided page counts for the various subparts for sub-request 2 given Plaintiff's multiple rescoping requests.  *See* Ex. 7.

March 24, 2023 at approximately 3:33 p.m., Plaintiff provided an additional re-scoping proposal for sub-request 1 (elimination of calendar invites and calendar entries attached to relevant emails); sub-request 2 (eliminate the terms "sexual harassment" and "sexual misconduct" and apply the search terms "Washington Post" only in connection with reporters "Carol Leonnig," "Lisa Rein," or "Maria Sachhetti" during the time frames of April 16, 2021 through April 23, 2021 and July 20, 2022 through September 23, 2022; use the search term "CNN" only in connection with the reporters "Geneva Sands," "Whitney Wild," "Priscilla Alvarez," or "Zachery Cohen" during the time frame of February 8, 2022 through August 13, 2022); and use the search term "New York Times" only in connection with the reporters "Zolan Kanno-Youngs," "Eileen Sullivan," "Chris Cameron," or "Luke Broadwater" for the time frames of June 14, 2021-July 2, 2021 and April 5, 2022-August 13, 2022. *Id.* Ex. 8, March 24, 2023, Email. Plaintiff also agreed to eliminate sub-request 4 (calendars).

Consistent with the Court's April 3, 2023, Order, on April 17, 2023, the Inspector General made its first interim production to Plaintiff's FOIA request as rescoped on March 23, 2023, consisting of 603 processed pages. *See* ECF No. 14 at 1.

On May 9, 2023, personnel from the Inspector General's Information Technology office and FOIA Unit met with Plaintiff to address questions it outlined to Defendant's counsel, and which included a request for the approximate page counts of Plaintiff's March 23, 2023, and March 24, 2023, re-scoped requests.[3] *See* ECF No. 16 at 2. While Plaintiff asserts that the Department had not yet implemented the narrowed modifications offered on March 23 and

---

[3]      Plaintiff asserts that the delay in scheduling the meeting was due to the Department and intimates that it was intentional, but that is incorrect. While there was some delay due to scheduled medical and annual leave with various stakeholders' availability to participate, at least one week of the delay was also attributable to the undersigned having COVID-19 and recovering from it. The delay was not intentional.

March 24, Mot. at 3, the Inspector General did not yet know at that point, how Plaintiff wanted to proceed given that it had asked for page counts for both the March 23, 2023, and March 24, 2023, re-scoped requests for purposes of the May 9, 2023, meeting and possible narrowing of the request.

Further, while Plaintiff notes that it was troubled that the Inspector General did not provide the names of Department participants, except for counsel, Mot. at 3, at that time, the undersigned was aware that Inspector General employees and contractors had received an unsolicited email from Mr. Nick Schwellenbach of Plaintiff on March 8, 2023 which stated, among other things: "If you're interested in learning more about why some within [the Inspector General] distrust their senior leadership, check out Plaintiff's podcast on some of [Inspector General] Cuffari's controversial decisions." Ex. 9, Nick Schwellenbach Email. The Inspector General, however, does not publicly disclose the email addresses of its employees (some of whom are criminal investigators) or contractors. It is unknown how Plaintiff obtained such information and thus led to privacy concerns for Inspector General employees involved in the meeting. The primary concern with revealing the identities of the attendees, other than their Inspector General positions, was each individual's privacy interest. As noted above, given that Plaintiff had obtained the names and email addresses for over 800 Inspector General employees and contractors and that Plaintiff had previously blogged about this litigation publicly, the Inspector General was reticent to provide employees' names.

Plaintiff made a further re-scoped request on May 11, 2023, which eliminated the custodians "Glenn Skar" and "Ellen McSweeney." Ex. 10, May 11, 2023, Letter. On May 17, 2023, the Inspector General provided its second interim production as re-scoped by Plaintiff on March 23, 2023, as to the search date range for sub-request 2 and processed 621 pages of

potentially responsive information.  ECF No. 16 at 1.

On May 19, 2023, the Inspector General provided the page counts to Plaintiff as discussed during the May 9, 2023, meeting, which confirmed that as discussed on the phone call, sub-request 2 continued to drive the largest number of responsive pages per the March 24, 2023, rescoped request.  *See* Ex. 11, May 19, 2023, Letter to Plaintiff.

### III.   **The Inspector General's FOIA Workload**

As of May 23, 2023, the Inspector General's FOIA Unit is actively processing 402 FOIA requests, consults, referrals, and appeals, and assisting with 14 open federal district court cases, three of which are in active record production or preparing for record production.  Chigewe Decl. ¶ 7.  Since the end of the fiscal year 2022, FOIA litigation has increased by almost 38.5%, from 13 to 18 open FOIA matters in litigation over the course of fiscal year 2023, four of which as of May 23, 2023, have been closed.  *Id.* ¶ 8.  While the FOIA Unit has seen an increase in incoming FOIA requests, consults, and referrals, the number of cases in litigation have also increased.  *Id.* ¶ 8.  Between October 1, 2022, and May 23, 2023, the Inspector General's FOIA Unit assisted (and continues to assist) with 18 cases in litigation.  *Id.*  Given the Inspector General's smaller size, both in general as an agency and as a FOIA Unit, any increase, let alone a 38.5% increase in less than 12 months, is substantial.  *Id.*  Although the Inspector General's FOIA Unit has worked extensively to reduce the current backlog of FOIA requests, a backlog still exists.  *Id.* ¶ 9. Currently, the FOIA Unit is addressing 395 requests in the backlog.  *Id.*

In addition to the increased number of FOIA requests received by the Inspector General, the substance of the FOIA requests has become significantly more complex, and requestors are seeking an overwhelming amount of information and records.  *Id.* ¶ 10.  For instance, many requests will include multiple subparts, and they will seek "any and all" records that "relate, refer,

or mention" a certain word, phrase, investigation, or subject.  This type of request requires the FOIA Unit to (1) conduct an initial reading and review of a multi-page request, (2) potentially search multiple Program Offices and subdivisions, (3) potentially review an extensive number of pages for responsiveness; and (4) potentially process hundreds of thousands of pages to ensure appropriate redactions are made over exempt information.  *Id.*  Receiving large and complex FOIA requests adds to the FOIA Unit's workload volume.  *Id.* ¶ 11.  To ensure fairness to all FOIA requestors, including those that submit such complex and extensive FOIA requests, the FOIA Unit processes requests on a "first-in, first-out basis."  *Id.* ¶ 12.

The FOIA Unit is comprised of five employees: an intake specialist and four government information specialists.  *Id.* ¶ 13.  The intake specialist manages, reviews, and responds to emails within the FOIA inbox for the Inspector General; performs first-line analysis of initial FOIA requests to ensure they are within the purview of the Inspector General; maintains an electronic database of FOIA requests, appeals, and litigation; and compiles and provides weekly FOIA significant reports and monthly Inspector General FOIA program status reports to Inspector General leadership.  *Id.*  A staff of government information specialists process FOIA requests from start to finish, including the evaluation of a request to determine if it is proper under Department FOIA regulations and referral of requests to other government agencies.  *Id.* ¶ 14.  Government information specialists also identify the program offices likely to possess responsive records and tasks the appropriate program offices to conduct the necessary searches.  *Id.*  Once the records are received, the specialists then make determinations as to whether the records are responsive to the FOIA request at issue.  *Id.*  If information is deemed to be responsive, the specialist will redact information pursuant to FOIA or the Privacy Act as appropriate, while simultaneously ensuring that all reasonably segregable non-exempt information is released.  *Id.*  There is not a litigation

team separate and apart from an administrative team within the Inspector General's FOIA Unit; rather, the four specialists that comprise the FOIA Unit handle the processing and initial redactions of all FOIA requests, whether the request is in an administrative or litigation state. *Id.* ¶ 15. At any given time, one specialist may be working on processing and managing multiple new FOIA requests, backlog requests, litigation requests, and appeals. *Id.*

As of May 26, 2023, there is one specialist assigned to this case and this specialist is also assigned to handle 61 pending FOIA requests. *Id.* ¶¶ 15-16. For the last eight months' time, 80% of the specialist's time has been spent on the present litigation, in part, due to the numerous re-scoping requests made by Plaintiff and its requests for page counts. *Id.* ¶ 17. The re-scoping requests have required numerous meetings with the Information Technology Office, the Inspector General's Office of Counsel, the Information Law and Disclosure Division, the Assistant United States Attorney, Plaintiff, and Plaintiff's counsel. *Id.* Additionally, based on the April 3, 2023, Court Order, the specialist conducts a line-by-line review and processing of 600 pages of records per month, which takes approximately 70 hours per month. *Id.* As with the daily FOIA case responsibilities, the specialist is required to finalize the records after quality control review; draft the response letter and any referral letters; and finalize and send all referral and response letters. *Id.* The remaining specialists have similar workloads. *Id.* ¶ 18.

## LEGAL STANDARD

"Courts have broad discretion to determine a reasonable processing rate for a FOIA request." *Colbert v. FBI*, Civ. A. No. 16-1790 (DLF), 2018 WL 6299966, at *3 (D.D.C. Sept. 3, 2018) (collecting cases). "Several factors inform the analysis, including the size and compelling need of the request compared to others, as well as the effect of the request on the [agency's] ability to review other FOIA requests." *Id.* Courts within the D.C. Circuit have "considered the effect of

other FOIA requests when analyzing the burden on an agency of meeting deadlines for review and production of FOIA material in a given case." *Middle E. Forum v. Dept' of Homeland Sec.*, 297 F. Supp. 3d 183, 185 (D.D.C. 2018) (collecting cases).  In this vein, "courts have looked to the volume of requests an agency faces, how much requests to the agency have increased in recent years, the resources and capacity of the agency, other FOIA litigation in which the agency is involved, the agency's release policies, and how ordering swifter production would affect other FOIA requesters patiently waiting their turn." *Harrington v. FDA*, 581 F. Supp. 3d 145, 150 (D.D.C. 2022) (citing *Nat'l Sec. Counselors v. Dep't of Just.*, 848 F.3d 467, 471-72 (D.C. Cir. 2017) (agency policy of processing 500 pages per month "serves to promote efficient responses to a larger number of requestors); *see also Open Am. v. Watergate Special Pros. Force*, 547 F.2d 605, 612, 614 (D.C. Cir. 1976); *Middle E. Forum*, 297 F. Supp. 3d at 185-86; *Colbert*, 2018 WL 6299966, at \*3; *Energy Future Coal. v. Off. of Mgmt. & Budge*t, 200 F. Supp. 3d 154, 161 (D.D.C. 2016); *Elec. Privacy Info. Ctr. v. Dep't of Just.*, 15 F. Supp. 3d 32, 47 (D.D.C 2014)).  Supporting "[a]gency affidavits are accorded a presumption of good faith which cannot be rebutted by purely speculative claims." *Middle E. Forum*, 297 F. Supp. 3d at 186 (quoting *Energy Future Coal.*, 200 F. Supp. 3d at 159)).

## ARGUMENT

### I.     Plaintiff's Request Fails to Warrant Expedited Processing.

Plaintiff asks the Court to order the Department "to process documents at a rate of 1,000 responsive, non-duplicate records per month, and to conduct a search for responsive text messages."   Mot. at 9.  The Court should deny Plaintiff's motion because the relief requested would upend the Inspector General's FOIA resources and would displace the other numerous pending FOIA requests, including those in litigation.  Setting aside the resource constraints and displacement of other requests, Plaintiff has not shown that expedited processing is warranted

under the applicable Department regulations, which require, as applicable, current exigency or that the matter is one of widespread and exceptional media interest, and that absent expedited processing, significant adverse consequences will result.  On these bases, the Court should deny Plaintiff's request for extraordinary relief.

Although the Department is not seeking a stay of this case under *Open America v. Watergate Special Prosecution Force*, 547 F.2d 605 (D.C. Cir. 1976), it is appropriate for the Court to consider the facts, circumstances, and practicalities facing the Inspector General's FOIA staff in evaluating Plaintiff's request for an increased processing rate.  *See, e.g.*, *Middle E. Forum*, 297 F. Supp. 3d at 185 (courts in D.C. Circuit have considered the effect of other FOIA requests when analyzing the burden on an agency of meeting deadlines for review and production of FOIA material); *Elec. Privacy Info. Ctr. v. Dep't of Just.*, 15 F. Supp. 3d 32, 47 (D.D.C. 2014) (denying plaintiff's motion for preliminary injunction requesting immediate production of documents pursuant to FOIA request, weighing the effect an injunction would have on other FOIA requesters, and noting that agencies typically respond to FOIA requests on a "first-in/first-out" basis unless a requestor shows a compelling need for expedition).

The Inspector General's FOIA Unit has been inundated by increasing numbers of FOIA requests and litigation in recent years, on top of many other responsibilities.  *See* Ex. 1 ¶¶ 7-11, 13-16.  *See, e.g.*, *Am. Ctr. for Law & Just. v. Dep't. of Homeland Sec.*, Civ. A. No. 21-1364 (TNM), 2021 WL 5231939, at *3-5 (D.D.C. Nov. 10, 2021) (discussing the history and burdens of FOIA). And Plaintiff's own actions have contributed to the Inspector General's inability to process its currently pending FOIA requests.  Plaintiff has submitted a FOIA request which the Inspector General has, at Plaintiff's request, rescoped over multiple iterations, all generating a consistently high number of potentially responsive pages. Ex. 1 ¶ 17.  The Inspector General's FOIA Unit has

expended significant and disproportionate resources on the instant litigation, which has comprised 80% of the government information specialist's time.  *Id*.

At the same time, the Inspector General's FOIA Unit is required to produce responsive, non-exempt pages of records in response to multiple other FOIA matters, including as of May 23, 2023, 402 active FOIA requests and 14 open FOIA cases in federal district court, three of which are either in or preparing to be in active record production, with a limited staff consisting of four government information specialists and one intake specialist.  *Id*. ¶¶ 7, 13.  Devoting any more of the Inspector General's finite FOIA resources to Plaintiff's request in this case would further reduce the already constrained resources the Inspector General's FOIA Unit has available to fulfill requests submitted by multiple other requesters.  And doing so would run contrary to Inspector General's policy to process requests in the order in which they are received and would unfairly favor Plaintiff's requests over others submitted earlier in time.  *Id*. ¶ 12, 5-16, 18-21.  Given the Inspector General's limited staff resources, number of active FOIA requests, and number of active litigation matters that it is processing ahead of Plaintiff's request, it is reasonable for the Inspector General to process 600 pages per month, per this Court's April 3, 2023, Order.  *See Middle E. Forum*, 297 F. Supp. 3d at 185-86 (considering the effect of other FOIA requests when analyzing the burden on an agency of meeting deadlines for review and production of FOIA material in a given case, as well as the volume of requests, resources and capacity of the agency, other FOIA litigation in which the agency is involved, and how ordering swifter production would affect other FOIA requesters patiently waiting their turn).

Any order for increased processing—let alone the processing rate Plaintiff requests, a whopping 1,000 pages of responsive, non-duplicate pages on a monthly basis—would require additional government information specialists to work on this litigation, which would cause

substantial disruption to the processing of pending FOIA requests and ongoing FOIA litigation, would displace other pending FOIA requests, and would impair the FOIA Unit's ability to ensure that the production of records comports with FOIA disclosure limitations. Ex. 1 ¶ 18. The FOIA Unit is unable to increase the production number to 1,000 responsive and non-duplicative pages due to limited resources, competing priorities and deadlines, other non-litigation tasks, and the overall volume of work. *Id.* ¶¶ 19-21.

In any event, the current processing rate of 600 pages per month, which this Court set in an April 3, 2023, Order, is consistent with other processing FOIA processing rates set by courts within this district and the D.C. Circuit. *See, e.g., Nat'l Sec. Counselors v. Dep't of Just.*, 848 F.3d 467, 471–72 (D.C. Cir. 2017) (recognizing that FBI's 500-page-per-month policy "serves to promote efficient responses to a larger number of requesters"); Min. Order, *Project for Privacy & Surveillance Accountability, Inc. v. Office of the Dir. of Nat'l Intel.*, Civ. A. No. 21-1217 (TSC) (D.D.C. Apr. 19, 2022) (approving, over the plaintiff's objection, agency's processing rate of 100 pages per month); Min. Order, *Citizens for Resp. & Ethics in Wash. v. Dep't of Homeland Sec.*, Civ. A. No. 19-3544 (APM) (D.D.C. Feb. 1, 2022) (declining to increase the processing of 300 pages to 500 pages per month); *Chaverra v. ICE*, Civ. A. No. 18-0289 (JEB), 2020 WL 7419670, at *1 (D.D.C. Nov. 5, 2020) ("this Court and others have approved production schedules akin to what [the agency] proposes here"—i.e., roughly 500 pages per month); Min. Order, *Martinez v. Dep't of Just.*, Civ. A. No. 20-0251 (RDM) (D.D.C. June 5, 2020) (ordering 500 page per month processing rate); Min. Order, *Reps. Comm. for Freedom of the Press v. CBP,* Civ. A. No. 19-2401 (CRC) (D.D.C. Apr. 3, 2020) (ordering 500 page per month processing rate); Min. Order, *S. Utah Wilderness All. v. Dep't of Interior*, Civ. A. No. 19-2203 (TNM) (D.D.C. Nov. 25, 2019) (ordering 500 page per month processing rate); Min. Order, *Ctr. for Reproductive Rights v. Dep't of State,*

Civ. A. No. 18-2217 (DLF) (D.D.C. Apr. 3, 2019) (denying plaintiff's request for a 1,000 page per month processing rate; ordering a 300 page per month processing rate); Min. Order, *Ctr. for Bio. Diversity v. Dep't of Interior*, Civ. A. No. 17-1595 (RC) (D.D.C. July 23, 2019) (ordering 500 page per month processing rate); *Energy Future Coal.*, 200 F. Supp. at 161 (D.D.C. 2016) (rejecting plaintiff's motion to mandate review of 1,000 documents per month and taking into account the increase in number of FOIA requests directed to agency, number of FOIA requests under review, and number of FOIA litigations in which agency involved).

Plaintiff's reference to *Seavey v. Dep't of Just.*, 266 F. Supp. 3d 241 (D.D.C. 2017), Mot. at 5, is inapposite from the present facts.  There, the district court found that processing at a faster pace would not "monopolize" its resources and delay other requests.  *Id.* at 246.  But the Inspector General has made an evidentiary showing that any increased rate of production would monopolize its resources and delay other requests.  *See* Ex. 1 ¶¶ 15-21.  Since the current processing rate is consistent with most other district courts' decisions to set processing rates consistent with federal agencies' very limited resources, this Court should likewise decline to increase the Inspector General's processing rate in this case.

Plaintiff has also not demonstrated that it is entitled to expedited processing under the applicable Department FOIA regulations, which require that a plaintiff show a compelling need as to why it should be allowed to jump to the front of the line.  *See Middle E. Forum*, 297 F. Supp. 3d at 186.  Not only does Plaintiff fail to advance this argument, but it also states in a generalized and vague way that it seeks the requested information "to learn the truth behind Inspector General Cuffari's removal of damaging evidence from the draft [Inspector General] report," Mot. at 6.  This is insufficient.  As the D.C. Circuit explained in *Al-Fayed v. CIA*, 254 F.3d 300, 310 (D.C. Cir. 2001), "[a]s an overarching principle, the legislative history [of the FOIA statute] declares that

'[t]he specified categories for compelling need are intended to be narrowly applied.'" *Id.* (quoting H.R. Rep. No. 104-795, at 26 (1996)). "Congress' rationale for a narrow application is clear: 'Given the finite resources generally available for fulfilling FOIA requests, unduly generous use of the expedited processing procedure would unfairly disadvantage other requestors who do not qualify for its treatment.'" *Id.* Thus, the standard of "urgency to inform" "requires that the information requested should pertain to a matter of current exigency to the American public and that a reasonable person might conclude that the consequences of delaying a response to a FOIA request would compromise a significant recognized interest." *Id.* "The public's right to know, although a significant and important value, would not by itself be sufficient to satisfy this standard." *Id.*

Thus, there are three factors to demonstrate a "compelling need" under the FOIA statute, including: (1) whether the request concerns a matter of current exigency to the American public; (2) whether the consequences of delaying a response would compromise a significant recognized interest; and (3) whether the request concerns federal government activity. *Id.* Further, Plaintiff's FOIA request fails on the second prong of the FOIA statute's compelling need analysis. Specifically, Plaintiff's FOIA request centers on a request for documents related to a draft report titled "CBP, ICE, TSA, and USSS Handling of Employee Allegations of Sexual Harassment and Workplace Sexual Misconduct" and associated records prior to December 3, 2020. *See* Mot. at 1 n.1; ECF No. 1 ¶¶ 18-24. The matter is not one of current exigency. This is because Plaintiff requests information that is now nearly three years old. *See Al-Fayed*, 254 F.3d at 233 (affirming the district court's denial of plaintiff's motion for a preliminary injunction which requested the expedited processing of records, since at the time plaintiff filed the motion, the events giving rise to the request occurred two to three years before plaintiff made his request). The Court should

deny Plaintiff's motion because it has not "demonstrated that [its] FOIA request[] relate[s] to a matter of current exigency to the American public."  *Id*. (cleaned up).

Separately, Department regulations allow it to determine if expedited processing is warranted when the component determines that a requestor has established (1) an imminent threat to the life or physical safety of an individual, (2) an "urgency to inform the public about an actual or alleged federal government activity," (3) a threatened loss of substantial due process rights, or (4) "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence." 6 C.F.R. § 5.5(e)(1). Expediting a request, however, is discretionary, and "[c]omponents ordinarily will respond to requests according to their order of receipt."  6 C.F.R. § 5.5(a).  "If expedited processing is granted, the request shall be given priority, placed in the processing track for expedited requests, and shall be processed as soon as practicable."  *Id.* § 5.5(e)(4); *see also* 5 U.S.C. § 552(a)(6)(E)(iii).  The Inspector General has not determined that a compelling need is present under its own regulations; thus, Plaintiff is without relief under Department regulations.[4]  In any event, Plaintiff has not claimed, other than in vague and generalized statements, that the material is needed "to learn the truth behind Inspector General Cuffari's removal of damaging evidence from the draft [Inspector General] report," Mot. at 6.  The matter is not of widespread media attention (Plaintiff cites only one New York Times article on the issue, *see* ECF No. 1 ¶¶ 18-24) and the generalized statement supporting expedited processing does not demonstrate an urgency to warrant expedited processing. *C.f., e.g.*, *Clemente v. FBI*, 71 F. Supp. 3d 262 268-69 (D.D.C. 2014) (ordering FBI to process

---

[4]     Additionally, under Department regulations, a "requestor who seeks expedited processing must submit a statement certified to be true and correct, explaining in detail the basis for making the request for expedited processing." 6 C.F.R. § 5.5(e)(3).  Plaintiff's request for administrative expedited processing, Ex. 14, contained no certified statement.

5,000 pages per month where requests involved serious allegations of widespread corruption in law enforcement, requestor represented in litigation individuals who were victims of allegedly corrupt FBI agent, and requestor provided medical records showing she had terminal illness). *See also Elect. Privacy Info. Ctr. v. Dep't of Just.*, 322 F. Supp. 2d 1, 5-6 (D.D. C. 2003) (declining to find that a matter was one of a "widespread and exceptional media interest" when the matter appeared in thirty-one newspaper articles); *Energy Pol'y Adv. v. Dep't of the Interior*, Civ. A. No. 21-1247 (JEB), 2021 WL 4306079, at *4 (D.D.C. Sept. 22, 2021) (declining to find that the information requested was time sensitive or was a matter of genuine widespread public concern where plaintiff's cited concerns involved a government official's potential conflicts).

Nonetheless, Plaintiff's brief is devoid of any assertion that adverse consequences will result if its request for expedited processing is denied. *See Al-Fayed*, 254 F.3d at 311 (citing H.R. Rep. No. 104-795) ("By requiring a 'compelling need,' the expedited access procedure is intended to be limited to circumstances in which a delay in obtaining information can reasonably be foreseen to cause a significant adverse consequence to a recognized interest."). Based on Plaintiff's pleadings, it is unclear what "significant recognized interest" would be compromised by continuing to release the documents at the 600 page per month processing rate that the Court has currently ordered. *Energy Pol'y Adv.,* 2021 WL 4306079, at *4. Plaintiff has not established that having to wait for the responsive documents due to the breadth of its own request "justif[ies] placing its request[ ] ahead of others." *Legal Eagle, LLC v. Nat'l Sec. Council*, Civ. A. No. 20-1732 (RC), 2021 WL 1061222, at *6 (D.D.C. Mar. 18, 2021). Plaintiff has not shown that its request, which it chose to draft as currently written, warrants the displacement of other requestors who have patiently waited for their turn to receive responsive records.

## II.      The Department Has Conducted a Search for Responsive Text Messages Sent/Received with the Signal Application.

Plaintiff also seeks an order from the Court compelling the Department to conduct a search of responsive text messages, as part of Plaintiff's sub-request 2, which seeks, among other things, emails and text messages, and specifically requests that the Department conduct a search of responsive text messages sent using the "Signal" application.  Mot. at 8.   As demonstrated in the attached Declarations of Kristen Fredericks and Joseph Cuffari, Ex. 12, 13, on December 13, 2020, the Department's Cybersecurity and Infrastructure Security Agency issued an emergency directive informing Department components that it had recently discovered a software code that allowed malicious actors to gain access to federal computer networks and prescribed certain actions that components were required to take to mitigate the risk of further compromise of Department information systems.  *Id*. ¶ 3.   Until that time, the Signal messaging application was not approved on Department devices, though Ms. Fredericks and Mr. Cuffari were two of a small number of users authorized to install the application on their Inspector General-issued cell phones for the limited purposes of discussing, via secure means, the response to the above-described apparent breach.  *Id*. ¶ 4.   Neither of the declarants, however, recall sending or receiving a message on the Signal application relating to the topics identified in Plaintiff's FOIA request.  *Id*. ¶ 5.  Thereafter, in early 2021, well before Plaintiff filed its complaint, the declarants deleted the Signal application because they no longer had any need to use it.  *Id*. ¶ 6.[5]   As such, none of the messages Plaintiff seeks are available for production and the Court should decline to issue an order directing the Inspector General to search for the Signal application messages.

---

[5]      On May 11, 2023, Plaintiff eliminated the custodians "Glenn Skar" and "Ellen McSweeney," which were previously part of sub-request 2.  *See* Ex. 12, May 11, 2023 Email.

## CONCLUSION

For all the reasons set forth above, this Court should deny Plaintiff's request to order the

Department to process 1,000 pages of responsive non-duplicative pages or order the Department

to search for responsive text messages sent or received via the Signal messaging application.

Dated: June 5, 2023
       Washington, DC

                                             Respectfully submitted,

                                             MATTHEW M. GRAVES, D.C. Bar #481052
                                             United States Attorney

                                             BRIAN P. HUDAK
                                             Chief, Civil Division

                                             By:          */s/ Dedra S. Curteman*
                                                 DEDRA S. CURTEMAN
                                             Assistant United States Attorney
                                             601 D Street, NW
                                             Washington, DC 20530
                                             (202) 252-2550

                                             *Attorneys for the United States of America*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PROJECT ON GOVERNMENT
OVERSIGHT, INC.,

          Plaintiff,

    v.                               Civil Action No. 22-2424 (ABJ)

U.S. DEPARTMENT OF HOMELAND
SECURITY,

          Defendant.

**DEFENDANTS' INDEX OF EXHIBITS AND DECLARATIONS**

Defendant, the Department of Homeland Security, respectfully submits the following

Index of Exhibits and Declarations.

Exhibit 1:  Okechi Chigewe Declaration

Exhibit 2:  November 21, 2022, Email to Plaintiff

Exhibit 3:  November 29, 2022, Emails

Exhibit 4:  December 6, 2022, Email

Exhibit 5:  March 2, 2023, Email

Exhibit 6:  March 21, 2023, Email to Plaintiff

Exhibit 7:  March 23, 2023, Email

Exhibit 8:  March 24, 2023, Email

Exhibit 9:  Nick Schwellenbach Email

Exhibit 10:  May 11, 2023, Letter

Exhibit 11:  May 19, 2023, Letter to Plaintiff

Exhibit 12:  Kristen Fredericks Declaration

Exhibit 13:  Joseph Cuffari Declaration

Exhibit 14:  Plaintiff's Request for Administrative Expedited Processing

Dated: June 5, 2023
          Washington, DC

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division


By:  _____/s/ Dedra S. Curteman_____
        DEDRA S. CURTEMAN
        Assistant United States Attorney
        601 D Street, NW
        Washington, DC 20530
        (202) 252-2550

*Attorneys for the United States of America*