# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **PROJECT ON GOVERNMENT OVERSIGHT, INC.,** | ) ) ) ) | |
| *Plaintiff,* | ) ) ) | |
| v. | ) ) ) | Civil Action No. 22-2424 (ABJ) |
| **U.S. DEPARTMENT OF HOMELAND SECURITY**, | ) ) ) | |
| *Defendant.* | ) ) ) | |

## PLAINTIFF'S MOTION FOR A STATUS CONFERENCE AND SUPPORTING MEMORANDUM

Plaintiff Project On Government Oversight, Inc. ("POGO") requests that the Court set a status conference in this Freedom of Information Act ("FOIA") matter to address ongoing issues raised by the document productions defendant U.S. Department of Homeland Security ("DHS") has made to date. In three of the last four productions DHS has withheld all or nearly all documents claiming they are either non-responsive or subject to complete withholding pursuant to FOIA Exemptions 5, 6, and 7(C). The breadth of the redactions raises a serious question of whether DHS has complied with its obligation under the FOIA to segregate and release for production all non-exempt material. Counsel for Plaintiff has twice requested an explanation for the withholdings and most recently requested an opportunity to speak with the agency about the redactions and why it was treating so many documents as non-responsive. Each time DHS refused to provide any additional information, claiming it has no obligation to do so at this stage of the litigation. As a result, POGO faces the likelihood that DHS will repeat this troubling pattern again and again, with relief years away. Accordingly, Plaintiff seeks a status conference to address how the parties may obtain a timely resolution of these preliminary issues.

## BACKGROUND

POGO's FOIA request at issue, submitted to DHS on July 5, 2022, seeks on an expedited basis documents related to efforts by Inspector General ("IG") Joseph V. Cuffari to change and suppress findings in a draft Office of Inspector General ("OIG") report on misconduct and domestic violence within the agency. Complaint ¶ 30 (ECF No. 1). DHS ignored POGO's request for expedition and provided POGO with no response whatsoever. *Id.* ¶ 35. POGO filed this lawsuit on August 15, 2022, nearly 17 months ago. *See* ECF No. 1.

Unfortunately, even filing suit did not alter DHS's foot dragging and refusal to meaningfully engage with POGO. From the outset of the litigation DHS complained that the FOIA request at issue was too broad. In response, POGO narrowed the request in multiple ways and on multiple occasions, including after the Court issued an order on April 3, 2022, requiring DHS to process at least 600 pages per month. POGO narrowed its request: (1) first in October 2022 (*see* ECF No. 8); (2) subsequently in November and December 2022 (*see* ECF No. 9); (3) again in March 2023, by limiting certain date ranges and excluding certain categories of requested documents and search terms altogether (*see* ECF No. 12); (4) directly following a March 1, 2023 telephonic meeting between the parties by eliminating certain categories of requested information and narrowing the date range for three search terms likely to have generated a lot of potentially responsive documents; (*see id.*); (5) on March 23, 2023, after receiving a court-ordered page count from DHS, by limiting the date range for one category; (*see* ECF No. 13); (6) on March 24, 2023, by further eliminating requested categories of documents and terms and narrowing the reach of others (*see id.*); and (7) on May 11, 2023, by eliminating two individuals from all categories of its request. *See* letter from Anne L. Weismann to Dedra A. Curteman, May 11, 2023 (enclosed as Exhibit A to ECF 15).

DHS for its part insisted it needs decades to process the narrowed request. Even the Court's April 3 processing order did not stop DHS from withholding hundreds of pages it claimed were duplicates and in one production providing a document the agency had previously posted on its website. The agency's continued intransigence led Plaintiff to file a Motion for a Processing Order seeking a compelled production of at least 1000 non-duplicative pages per month. *See generally* Plaintiff's Motion for a Processing Order and Supporting Memorandum (P's Proc. Mem.") (ECF No. 15). The Court has yet to rule on that motion.

DHS also refused to search for responsive messages sent on apps such as Signal in response to that portion of POGO's FOIA request seeking emails and text messages from specified individuals including Chief of Staff Kristen Fredricks and IG Cuffari. *See* Exhibit A to P's Proc. Mem. (ECF No. 15-1). When POGO pressed the issue, DHS through counsel "decline[d] to address" it, claiming text message issues "are properly presented at the summary judgment stage." *See* Exhibit B to P's Proc. Mem. (ECF No. 15-2). POGO's motion for a processing order sought relief for this failure as well. As POGO pointed out, allowing DHS to unilaterally choose to ignore a requested category of records and not be held accountable until its search is completed—something likely to take decades here at the current pace—would empower DHS and any other agency to pick and choose those categories of requested documents that it wants to process, ignoring others with impunity. *See* P's Proc. Mem. at 8-9. DHS has offered no reasonable basis to defer resolving whether it must search for a requested category of documents.

On June 12, 2023, POGO filed a motion for discovery to address the apparent bad faith of DHS in responding to that portion of Plaintiff's Freedom of Information Act request seeking responsive text messages. Plaintiff filed its motion in the wake of revelations that IG

Cuffari had destroyed and continued to destroy all his text messages despite the pendency of the FOIA request at issue. IG Cuffari's actions came to light during a congressional hearing on June 6, 2023, in which he testified before the Subcommittee on National Security, the Border, and Foreign Affairs of the House Committee on Oversight and Accountability. *See* P's M. for Discovery (ECF No. 19-1) at 2. POGO's motion also rested on the newly discovered actions of IG Cuffari's staff upon previously learning when searching for documents responsive to the FOIA request at issue that IG Cuffari had deleted all his text messages without capturing them in an agency recordkeeping system. *Id.* at 3. POGO sought discovery to answer the serious and compelling questions about the apparent bad faith of DHS and IG Cuffari in responding to POGO's FOIA request. *Id.* at 5. That motion also is pending.

In the interim DHS has continued to make monthly productions to POGO but increasingly those productions also raise questions about the agency's good faith in responding to the request. In the seventh production made on October 17, 2023, DHS withheld 304 pages in full, citing FOIA Exemptions 5 and its protection for pre-decisional deliberative communications as well as Exemptions 6 and 7(C) purportedly to protect the identities of third parties. *See* DHS Letter of Oct. 17, 2023 (Ex. A). In that same production DHS claimed it was withholding 327 pages as non-responsive. *Id.* DHS produced no documents to POGO in its seventh production.

Following this production POGO reached out to DHS through counsel requesting an explanation for why the agency had failed to segregate and produce non-exempt material. In response, DHS counsel stated that "the Agency does not have an obligation in this very premature posture to provide the justifications for those withholdings . . . or explain the

Agency's segregability efforts." Email from Dedra Curteman to Anne Weismann, Oct. 19, 2023 (Ex. B).

On November 17, 2023, DHS made an eighth production that closely tracked its previous production. Specifically, DHS withheld 406 pages in full, claimed 148 pages were non-responsive, claimed 100 pages were duplicates, released six pages in full and five pages in part. *See* DHS Letter of Nov. 17, 2023 (Ex. C). Once again DHS relied on FOIA Exemptions 5, 6, and 7(C) for its withholdings. *Id.*

In its most recent production on December 15, 2023, DHS withheld 395 pages in full, deemed 252 pages as non-responsive, produced six pages in full, and released one page in part. DHS Letter of Dec. 15, 2023 (Ex. D). As justification for its withholdings DHS cited Exemptions 5, 6, and 7(C). *Id.*

Given what was now a disturbing trend, POGO once again reached out to DHS through counsel for an explanation of the agency's failure to segregate and why DHS deemed so many documents to be non-responsive. *See* Ex. B. POGO requested an opportunity to speak with DHS about these issues. DHS's response parroted its earlier response, specifically that "the Agency does not have an obligation in this very premature posture to provide the justifications for those withholdings . . . or explain the Agency's segregability efforts." *Id.* With DHS's refusal to provide any explanation for why it essentially has segregated no information whatsoever from most of its withholdings and what is driving the high non-responsive count POGO anticipates future productions will mirror the last three, with no opportunity for correction until well into the future.

## ARGUMENT

As the D.C. Circuit has recognized, agency delay in producing records responsive to a

FOIA request may be tantamount to denial "when stale information is of little value[.]" *Payne Enterprises, Inc. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988). This is especially the case for organizations like POGO that use the FOIA for investigative work in "champion[ing] reforms to achieve a more effective, ethical, and accountable federal government that safeguards constitutional principles." Compl. ¶ 4. Delayed access to critical information undermines, if not defeats, POGO's ability to achieve its stated mission. Under comparable circumstances of unreasonable agency delay the court in *Payne* observed that such delay "has a 'direct and immediate' impact on the appellants that rises to the level of hardship." 837 F.2d at 494.

DHS's conduct in responding to POGO's FOIA request raises similar concerns. The questionable merits of its withholdings and its designation of so many documents as non-responsive coupled with its refusal to discuss these matters suggest the agency seeks to delay for as long as possible the disclosure of documents that may place IG Cuffari in a very bad public light.

First, in applying the privacy protections found in Exemptions 6 and 7(C) the responding agency must produce "any reasonably segregable portion of a record[.]" 5 U.S.C. § 552(b). Through the FOIA Improvement Act of 2016 Congress directed agencies to "consider whether partial disclosure of information is possible whenever the agency determines that a full disclosure of a requested record is not possible." Pub. L. No. 114-185, 130 Stat. 538, Sec. 2 (codified at 5 U.S.C. § 552(a)(8)(A)(ii)). Only where nonexempt material is "inextricably intertwined" with exempt material will a court deem segregation not possible. *See, e.g.*, *Mead Data Central, Inc. v. Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977). For documents that contain both personally identifying information and

non-identifying factual information the solution "is to redact those exempt pieces of information and release everything else." *Inst. for Justice v. IRS*, 547 F. Supp. 3d 1, 8 (D.D.C. 2021). But the "statutory scheme does not permit a bare claim of confidentiality to immunize agency [records] from scrutiny" in their entirety. *Bristol-Myers Co. v. FTC*, 424 F.2d 935, 938 (D.C. Cir. 1970).

Here, however, in the last three productions alone DHS has withheld 1,105 pages in full relying in part of Exemptions 6 and 7(C). It defies credibility that after conducting the required line-by-line review to determine if segregation is possible, *see WP Co. LLC v. U.S. Dep't of Defense*, 626 F. Supp. 3d 69, 86 (D.D.C. 2022), DHS found nothing that could be produced without revealing privacy protected material.

Second, DHS made a blanket assertion that the protection of Exemption 5 for deliberative process material permitted the agency to withhold those same 1,105 pages in their entirety. The deliberative process privilege, however, protects only deliberative material and not factual material, which does not expose agency deliberations. *See, e.g.*, *EPA v. Mink*, 410 U.S. 73, 91 (1973). Accordingly, in processing records believed to fall within the deliberative process privilege an agency must segregate and produce factual material. Here given the breadth of DHS's withholdings there is no reason to believe DHS conducted that segregation process occurred.

Moreover, agencies are required to apply the foreseeable harm standard, codified at 5 U.S.C. § 552(a)(8)(A), before making a determination to withhold information. In the context of the deliberative process privilege this requires the agency to "focus on the information at issue" and "connect that information to a specific harm in disclosure." *Machado Amadis v. U.S. Dep't of State*, 971 F.3d 364, 371 (D.C. Cir. 2020). Importantly,

Congress codified the foreseeable harm standard to ensure the deliberative process privilege was not used to cover up agency misconduct. The foreseeable harm standard reflects Congress' judgment that "[n]ondisclosure should never be based on an effort to protect the personal interests of Government officials at the expense of those they are supposed to serve." S. Rep. No. 114-4, at 7. As a result, "information may not be withheld 'merely because public officials might be embarrassed by disclosure, because errors and failures might be revealed, or because of speculative or abstract fears.'" *Id.* (quoting White House Memorandum for the Heads of Executive Departments and Agencies, 74 Fed. Reg. 4683 (Jan. 21, 2009)). The addition of the foreseeable harm requirement ensures that agencies "comply" not only "with the letter of" the FOIA, but also "the spirit of the law." *Center for Investigative Reporting v. U.S. Custom & Border Prot.*, 436 F. Supp. 3d 90, 104 (D.D.C. 2019) (quoting 162 Cong. Rec. H3717 (2016)).

Here there is reason to question whether DHS properly applied the foreseeable harm requirement given the expansive nature of the withholdings and its bare statement, with no further explanation, that it "considered the foreseeable harm standard as required by the statute[.]" *See* Exs. A, C and D. This raises an especially acute concern here given that POGO's FOIA request centers on actions by IG Cuffari to cover up findings of misconduct by agency personnel and IG Cuffari's deletion of responsive agency records after POGO submitted its request. Taken as a whole, they raise a serious question about whether DHS is engaged in a cover-up to protect IG Cuffari through its improper reliance on FOIA Exemption 5 and the deliberative process privilege.

Third, in the last three productions DHS has claimed 727 pages were non-responsive and completely rebuffed POGO's efforts to ascertain what is behind the high non-responsive count. Thus, POGO has no idea which, if any, of its narrowed search terms is producing

8

non-responsive documents and the extent to which POGO could further narrow the scope of its request. At the same time the agency is claiming to meet its 600-page monthly processing rate with a high number of documents that are either duplicates or non-responsive. As a result, POGO has received only 12 pages in full and six in part in the last three productions combined.

## CONCLUSION

POGO is mindful of the status of this case and the fact that DHS has yet to complete processing its request. But awaiting that completion—which DHS has estimated is years and possibly decades away—leaves POGO in the problematic posture that thousands of pages likely will have to be re-processed based on the overbreadth of DHS's withholdings, delaying this matter even further and ensuring critical information about IG Cuffari's actions will not come to light until long after any accountability is possible. It is equally likely that the agency will continue to deem a large swath of documents non-responsive without affording POGO a meaningful opportunity to avoid that result through further narrowing or clarification of its request.

In the interests of efficiency and resolving these issues without judicial intervention POGO has twice sought information from the agency that would explain whether DHS was properly applying the cited exemptions. POGO also has sought an explanation for why DHS has deemed so many documents non-responsive. In both instances DHS refused to engage in any discussions, rebuffing these inquiries as premature. This behavior as well as the agency's previous behavior that is the subject of Plaintiff's pending motions for a processing order and for discovery warrant the Court's attention. Accordingly, Plaintiff respectfully requests that the Court set a status conference at its earliest convenience to address how

these issues can be resolve in a timely manner and consistent with the FOIA's presumption of prompt disclosure.

Pursuant to LCvR 7(m) counsel for Plaintiff conferred with counsel for Defendant regarding this motion. Defendant opposes the motion.

Respectfully submitted,

/s/ Anne L. Weismann
Anne L. Weismann
(D.C. Bar No. 298190)
5335 Wisconsin Avenue, N.W., Suite 640
Washington, D.C. 20015
Phone: 301-717-6610
Weismann.anne@gmail.com

Dated: January 4, 2024