UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| PROJECT ON GOVERNMENT OVERSIGHT, INC.,<br><br>        Plaintiff,<br><br>    v.<br><br>DEPARTMENT OF HOMELAND SECURITY,<br><br>        Defendant. | Civil Action No. 22-2424 (ABJ) |

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO
PLAINTIFF'S MOTION FOR A STATUS CONFERENCE**

This Court should deny Plaintiff, the Project on Government Oversight's ("Plaintiff's),

motion for a status conference. *See* ECF No. 29 ("Pl's Mot."). Contrary to Plaintiff's unfounded

assertion that the Inspector General is delaying production of non-exempt information, Defendant,

the Department of Homeland Security's Office of Inspector General (the "Inspector General") has

expended significant resources and continues to work diligently to respond to Plaintiff's broad

request and has provided non-exempt, responsive records, and page counts in accordance with all

agreed upon and Court-ordered deadlines.

**BACKGROUND**

Plaintiff filed this FOIA action on August 18, 2022 concerning its July 5, 2022, FOIA

request. *See* ECF No. 1. Plaintiff's FOIA request seeks:

> (1)    All records sent to and/or in possession of Inspector General Joseph Cuffari,
> Deputy Inspector General and Chief of Staff Kristen Fredricks, Principal
> Deputy Inspector General Glenn Sklar, and/or [Department] official Ellen
> McSweeney about the Office of Inspector General project titled "CBP, ICE,
> TSA, and USSS Handling of Employee Allegations of Sexual Harassment
> and Workplace Sexual Misconduct" prior to December 3, 2020.   The

records do not have to mention the project by its exact name.  The records sought include but are not limited to emails and calendar invites or appointments related to briefings.  We also seek any attachments to relevant emails or calendar entries.

(2)     Emails and text messages (including messages in apps such as Signal) to and from and/or in the possession of [Inspector General] Joseph Cuffari, Deputy [Inspector General] and Chief of Staff Kristen Fredricks, Principal Deputy [Inspector General] Glenn Sklar, and [Department] official Ellen McSweeney mentioning "sexual harassment[,]" "sexual misconduct[,]" "domestic violence," "Lafayette Square[,]" "POGO,]" "Project on Government Oversight[,]" "Schwellenbach[,]" "Zagorin[,]" "Washington Post[,]" "New York Times[,]" "CNN[,]" "Durbin[,]" "Grassley[,]" "Maloney[,]" "Thompson[,]" "House Oversight[,]" "House Homeland Security[,]" and/or "Senate Judiciary." ([Inspector General employee] has a Signal account associated with [their] private cell phone number, [])

(3)     Emails to and from Joseph Cuffari, Kristen Fredericks, and Glenn Sklar with email addresses that include "mail.house.gov" and "senate.gov" mentioning "sexual harassment[,]" "sexual misconduct[,]" and "domestic violence" since April 6, 2022.

(4)     Calendars, including, but not limited to those created using Microsoft Outlook and Microsoft Teams, for Joseph Cuffari, Kristen Fredericks, and Glen Sklar since July 26, 2019.

(5)     Travel itineraries and any other travel records (including expense records for hotel and restaurants) for Joseph Cuffari since July 26, 2019.  Any emails to or from [Inspector General] Cuffari and/or Tamara Farmer regarding his travel, including transportation, hotel, and restaurant bookings.   Any [Inspector General] correspondence with Congress regarding [Inspector General] Cuffari's travel.  Any records regarding [Inspector General] Cuffari's meetings with Air Force Office of Special Investigation (AFOSI) officials.  On at least three occasions, [Inspector General] Cuffari has visited AFOSI officials during official travel (on February 21, 2020; December 10, 2021; and February 14, 2022).  [The Inspector General] uses Concur for managing travel.

*Id*. ¶ 30 (emphasis in original).

From the time of Plaintiff's filing until the Parties' December 2022 Joint Status Report, filed on December 15, 2022, the Parties conferred on at least six occasions (October 4, 19, and 20 and November 21, 28, and 29, 2022).  More specifically, on November 21, 2022, the undersigned

contacted Plaintiff's counsel with a specific proposal for narrowing given the breadth of Plaintiff's request, which at that time corresponded to over 318,780 pages of potentially responsive information for just one of the five sub-requests contained in the July 5, 2022, FOIA request.  *See* ECF No. 17-2 (Nov. 21, 2022, Email to Plaintiff).  *See also* ECF No. 10 (explaining that counsel reached out to Plaintiff's counsel on October 19, 20220, requesting that Plaintiff apply date ranges to sub-request 2; that on November 21, 2022, counsel reached out to Plaintiff's counsel advising that as written, the request would result in many pages; and on November 28, 2022, the undersigned counsel offered options to further narrow).

As of the December 2022 Joint Status Report, Plaintiff agreed to a re-scoping of four of the five sub-requests, but not in a way that substantially and meaningfully reduced the number of responsive pages.  ECF No. 9 at 1.  Following the Inspector General providing page counts for the sub-requests on November 21, 2022, Plaintiff began to make several re-scoping requests, which included a date range change for sub-request no. 1 from "prior to December 3, 2020" to "November 1, 2017 to December 3, 2020"; a date range change applicable to sub-request no. 2 to include from July 26, 2019 to the date of the search; an elimination of the search terms "domestic violence," "Thompson," "Maloney," "House Oversight," "House Homeland Security," and "Senate Judiciary" for sub-request no. 2;  clarification  that the terms "sexual harassment" and "sexual misconduct" listed in sub-request no. 2 should be connected to the report ("CBP, ICE, TSA, and USSS Handling of Employee Allegations of Sexual Harassment and Workplace Sexual Misconduct) listed in sub-request 1 to be responsive; and noting that the search for "POGO" "Project on Government Oversight," "Schwellenbach," "Zagorin," "Lafayette Square," "Grassley," "Durbin," "Washington Post," "New York Times," and "CNN" were not tied to any particular Inspector General project or report.  *See* ECF No. 17-3 (Nov. 29, 2022, Emails).  On

November 28, 2022, Plaintiff agreed to change the search date range for sub-request no. 3 to "July 26, 2019 until the date of search" and proposed to eliminate the then existing sub-request no. 5 and replace it with: (a) travel voucher forms and receipts/supporting documentation submitted in conjunction with the travel voucher forms for Joseph Cuffari since July 26, 2019; (b) any emails from Inspector General Cuffari regarding his travel, including transportation, hotel, and restaurant bookings since July 26, 2019, and (c) any correspondence between Congress and Inspector General Cuffari, Principal Deputy Inspector General Sklar, Counsel James Read and/or Chief of Staff Kristen Fredericks regarding Inspector General Cuffari's travel since July 26, 2019.  *See id*.  On November 29, 2022, Plaintiff changed the search date range for sub-request no. 1 to "July 26, 2019-December 3, 2020."  ECF No. 17-4 (Dec. 6, 2022, Email).  And on December 6, 2022, Plaintiff agreed to change the search date range for sub-request no. 2 to "July 26, 2019 to the date of the search."  *Id*.

Thereafter, on March 1, 2023, the Parties met via telephone to discuss Plaintiff's request and the approximate number of pages responsive to Plaintiff's request.  Based on that meeting, Plaintiff agreed to eliminate the supporting documentation and receipts for the travel vouchers in sub-request no. 5(a) and calendar attachments in sub-request no. 4.  Regarding sub-request no. 2, Plaintiff noted that it was not interested in receiving daily newsclips and full unannotated texts of published news articles.  On March 2, Plaintiff changed the search date ranges for the three news organizations listed in sub-request no. 2—the New York Times, Washington Post, and CNN.  *See* ECF No. 17-5 (Mar. 2, 2023, Email).

Pursuant to the Court's March 3, 2023, Order, on March 21, 2023, the Inspector General informed Plaintiff of the approximate number of potentially responsive page counts for sub-requests nos. 1 to 5, which was approximately 8,407 pages for sub-request no. 1, 263,942 pages

for sub-request no. 2,[1] 6,044 pages for sub-request no. 3, 10,837 pages for sub-request no. 4, and 1,453 pages, along with 102 voucher forms for sub-request no. 5.  *See* ECF No. 13 at 1; ECF No. 17-6 (Mar. 21, 2023, Email).  The undersigned also noted that for sub-request no. 2, the terms "sexual harassment," "sexual misconduct," "Lafayette Square," "Plaintiff," "Project on Government Oversight," "Schwellenbach," "Zagorin," "Durbin," "Grassley" with the date range July 29, 2019, until the date of search without news clippings, generated approximately 178,332 pages of responsive information.  *See id.*

On March 23, 2023, Plaintiff requested that the Inspector General further re-scope a portion of the second sub-request by changing the search date range to May 31, 2020 through the date of search and requested individual page counts for each of the search terms in sub-request no. 2 (i.e., "sexual harassment," "sexual misconduct," "Lafayette Square," "POGO," "Project on Government Oversight," "Schwellenback," "Zagorin," "Durbin," and "Grassley"), which the Inspector General agreed to do following its first production.  ECF No. 17-7 (March 23, 2023, Email).  On March 24, 2023, Plaintiff provided an additional re-scoping proposal for sub-request no. 1 (elimination of calendar invites and calendar entries attached to relevant emails); sub-request no. 2 (eliminate the terms "sexual harassment" and "sexual misconduct" and apply the search terms "Washington Post" only in connection with reporters "Carol Leonnig," "Lisa Rein," or "Maria Sacchetti" during the time frames of April 16, 2021 through April 23, 2021 and July 20, 2022 through September 23, 2022; use the search term "CNN" only in connection with the reporters "Geneva Sands," "Whitney Wild," "Priscilla Alvarez," or "Zachary Cohen" during the time frame of February 8, 2022 through August 13, 2022); and use the search term "New York

---

[1]    The Inspector General also provided page counts for the various subparts for sub-request no. 2 given Plaintiff's multiple rescoping requests.  *See* ECF No. 17-7.

Times" only in connection with the reporters "Zolan Kanno-Youngs," "Eileen Sullivan," "Chris Cameron," or "Luke Broadwater" for the time frames of June 14 to July 2, 2021, and April 5 to August 13, 2022.  ECF No. 17-8 (Mar. 24, 2023, Email).  Plaintiff also agreed to eliminate sub-request no. 4 (calendars).

Consistent with the Court's April 3, 2023, Order, on April 17, 2023, the Inspector General made its first interim production to Plaintiff's FOIA request as rescoped on March 23, 2023, consisting of 603 processed pages.  *See* ECF No. 14 at 1.

On May 9, 2023, personnel from the Inspector General's Information Technology office and FOIA Unit met with Plaintiff to address questions it outlined to Defendant's counsel, and which included a request for the approximate page counts of Plaintiff's March 23, 2023, and March 24, 2023, re-scoped requests.[2]  *See* ECF No. 16 at 2.  While Plaintiff asserts that the Department had not yet implemented the narrowed modifications offered on March 23 and March 24, Mot. at 3, the Inspector General did not yet know at that point, how Plaintiff wanted to proceed given that it had asked for page counts for both the March 23, 2023, and March 24, 2023, re-scoped requests for purposes of the May 9, 2023, meeting and possible narrowing of the request.

Further, while Plaintiff notes that it was troubled that the Inspector General did not provide the names of Department participants, except for counsel, Mot. at 3, at that time, the undersigned was aware that Inspector General employees and contractors had received an unsolicited email from Mr. Nick Schwellenbach of Plaintiff on March 8, 2023 which stated,

---

[2]  Plaintiff asserts that the delay in scheduling the meeting was due to the Department and intimates that it was intentional.  That is incorrect.  While there was some delay due to scheduled medical and annual leave with various stakeholders' availability to participate, at least one week of the delay was also attributable to the undersigned having COVID-19 and recovering from it.

among other things: "If you're interested in learning more about why some within [the Inspector General] distrust their senior leadership, check out Plaintiff's podcast on some of [Inspector General] Cuffari's controversial decisions."  ECF No. 17-9 (Nick Schwellenbach Email).  The Inspector General, however, does not publicly disclose the email addresses of its employees (some of whom are criminal investigators) or contractors.  It is unknown how Plaintiff obtained such information and thus led to privacy concerns for Inspector General employees involved in the meeting.  The primary concern with revealing the identities of the attendees, other than their Inspector General positions, was each individual's privacy interest.  As noted above, given that Plaintiff had obtained the names and email addresses for over 800 Inspector General employees and contractors and that Plaintiff had previously blogged about this litigation publicly, the Inspector General was reticent to provide employees' names.

Plaintiff made a further re-scoped request on May 11, 2023, which eliminated the custodians "Glenn Skar" and "Ellen McSweeney."  ECF No. 17-10 (May 11, 2023, Letter).  On May 17, 2023, the Inspector General provided its second interim production as re-scoped by Plaintiff on March 23, 2023, as to the search date range for sub-request no. 2 and processed 621 pages of potentially responsive information.  ECF No. 16 at 1.

On May 19, 2023, the Inspector General provided the page counts to Plaintiff as discussed during the May 9, 2023, meeting, which confirmed that as discussed on the phone call, sub-request no. 2 continued to drive the largest number of responsive pages per the March 24, 2023, rescoped request.  *See* ECF No. 17-11 (May 19, 2023, Letter to Plaintiff).

Since that time, the Inspector General has made monthly interim productions on June 16, 2023, July 17, 2023, August 17, 2023, September 15, 2023, October 17, 2023, November 17, 2023, December 15, 2023, and January 17, 2024.

## ARGUMENT

Plaintiff's requested relief for a status conference is premised on the assumption that the Inspector General has incorrectly withheld non-exempt documents and has failed to produce segregable material in the productions the Inspector General has made to date, which are far from complete. *See* Pl's Mot. at 7-9.[3]  Whether the Inspector General has properly withheld and segregated information, however, is a determination for the Court to make at the dispositive motion stage supported by a *Vaughn* index and a supporting declaration, after the parties have met and conferred following an agency's productions, not in the middle of an agency's production efforts. Because the Inspector General intends to make additional productions and there is no dispositive motion ripe at this early juncture, Plaintiff's motion is premature, and the Court should decline to order a status conference.

The standard practice in FOIA litigation is for an agency to create and file a *Vaughn* index—or other appropriate form of proof—in preparation for summary judgment after productions are complete and the parties have met and conferred in an attempt to narrow areas of disagreement.  Indeed, courts in this district generally do not require agencies to produce a *Vaughn* index prior to that time.  *See, e.g.*, *Pinson v. Dep't of Just.*, 975 F. Supp. 2d 20, 32 (D.D.C. 2013) (noting that a *Vaughn* index is not required until the defendants must factually support a motion for summary judgment); *Long v. Dep't of Homeland Sec.*, 436 F. Supp. 2d 38, 44 (D.D.C. 2006) (holding that plaintiff's request for a *Vaughn* index was premature as the government had not yet had a chance to file a dispositive motion and provide the court with the information necessary to make a decision on any material that might be subject to an exemption under the FOIA).  Motions to compel the production of a *Vaughn* index prior to the filing of a dispositive motion are routinely

---

[3]      Page references refer to the Court's pagination on the header of each page.

and summarily denied.  *See, e.g., Kilmer v. CBP*, Civ. A. No. 17-1566 (D.D.C.), Min. Order (Apr. 30, 2018) (denying motion to compel a *Vaughn* index and observing that "*Vaughn* indices are typically reserved for dispositive motions); *Willis v. FBI*, Civ. A. No. 17-1959 (D.D.C.), Min. Order (Feb. 2, 2018) (denying motion to compel a *Vaughn* index and noting that "ordinarily the Court requires submission of a *Vaughn* Index only after an agency completes its search and in conjunction with the briefing of dispositive motions on any withholdings"); *Bartko v. Dep't of Just.*, Civ. A. No. 17-0781 (D.D.C.), Min. Order (July 31, 2018) (denying motion to compel a *Vaughn* index "inasmuch as [the agency] shall provide its *Vaughn* Index in connection with summary-judgment briefing"); *Tracy v. Dep't of Just.*, Civ. A. No. 15-0403 (D.D.C.), May 21, 2015, Min. Order (denying motion to compel a *Vaughn* index and observing that plaintiff "may raise such challenges during the Summary Judgment Briefing process").

Plaintiff makes three arguments in support of the need for a status conference, which are all premised on a mistaken belief that the Inspector General's productions have omitted non-exempt information or information segregable from exempt information.  *See* Pl's Mot. at 8-10 (arguing that the last three productions were redacted in full under Exemptions 6 and 7(c) and that by extension, the Inspector General failed to segregate exempt from non-exempt information; that the Inspector General exempted information in the last three productions under the deliberative process exemption which Plaintiff believes can be segregated and that the Agency did not apply a foreseeable harm standard to the non-redacted information; and that the Agency determined in the last three productions that material was non-responsive).  While both assumptions are incorrect, Plaintiff's requested relief rests on the conclusion that the Agency must provide a *Vaughn* index and a supporting declaration showing that the information thus produced is exempt from disclosure, is not segregable from exempt information, and that release of the information would

cause foreseeable harm.  This type of relief is premature at this early stage of disclosure and is only appropriate once the Inspector General has had an opportunity to review all of Plaintiff's challenged withholdings, draft a *Vaughn* index and supporting declaration, and if necessary, also file a motion for summary judgment.

Further, Plaintiff's approach would require the Inspector General to divert resources away from processing and producing responsive records to Plaintiff's FOIA request and redirect those resources to preparing *Vaughn* indices each time Plaintiff decides to seek judicial review of a subset of the Inspector General's withholdings.  Courts in this district have not imposed such an onerous burden.  *See Citizens for Resp. & Ethics in Wash. v. Dep't of Just.*, 955 F. Supp. 2d 4, 14-15 (D.D.C. 2013) (discussing preparation of a *Vaughn* index after the agency completed processing all relevant documents); *Wash. Post v. Dep't of Def.*, 766 F. Supp. 1, 15-16 (D.D.C. 1991) ("[I]f after the [the agency's] review of the working files and release of all documents or portions of documents that it determines to be nonexempt [plaintiff] still contests the exemptions claimed by the [the agency's], the agency should then produce a detailed Vaughn index for a sample of the working files and move for summary judgment on the basis of that index.").  Because Plaintiff's requested relief is unfounded and premature, the Court should decline to set a status conference at this early juncture.

*       *       *

**CONCLUSION**

For all the reasons set forth above, this Court should deny Plaintiff's request for a status conference.

Dated: January 17, 2024            Respectfully submitted,
       Washington, DC

                                     MATTHEW M. GRAVES, D.C. Bar #481052
                                     United States Attorney

                                     BRIAN P. HUDAK
                                     Chief, Civil Division

By: _____*/s/ Dedra S. Curteman*_____
                                     DEDRA S. CURTEMAN
                                     Assistant United States Attorney
                                     601 D Street, NW
                                     Washington, DC 20530
                                     (202) 252-2550

                                     *Attorneys for the United States of America*